IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10-1232-WEB |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas, and as further described herein; | ) ) ) ) ) | |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman County, Kansas, and as further described herein; et al., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**<u>Memorandum and Order</u>**

This matter is before the court on plaintiff Northern Natural Gas Company's Motion to Confirm Condemnation Authority (Doc. 5). The owners of various defendant tracts have filed responses opposing the motion (Docs. 116, 117, 118, 122, 123 and 125).

Northern's motion is based on a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission (FERC) on June 2, 2010. Asserting a right to condemn the defendant property pursuant to the FERC Certificate and the Natural Gas Act, 15 U.S.C. § 717 et seq., Northern seeks an order confirming the Certificate and Northern's legal right to condemn the property listed in the Certificate.

I. *Facts*.

There appears to be no genuine dispute as to the material facts. Neither party has requested a hearing in connection with the motion.

Northern is a "natural gas company" within the meaning of the Natural Gas Act. On June 23, 1978, FERC issued a certificate of public convenience and necessity authorizing Northern to develop and operate the Cunningham Storage Field in Pratt and Kingman Counties, Kansas. *See* 77 FERC 61069, 1996 WL 808135, **7, n.1.

On September 14, 2009, Northern filed an application with FERC for a Certificate of Public Convenience and Necessity ("CPCN") seeking to expand the northern certificated boundary of the Cunningham Storage Field. Northern sought:

> authorization to expand the existing certificated storage boundary
> of its Cunningham storage field located in Pratt and Kingman,
> counties, Kansas, to include the Viola and Simpson formations in
> the Extension Area (including Northern's acquisition of all
> property interests), as described herein.

Doc. 6, Exh. 2, p.4.

Under FERC's regulations, Northern was required to include in its application a detailed discussion of geochemical, geological, and engineering information necessary for a full and complete understanding of the proposed project; the facts relied upon to show that the proposed acquisition is or will be required by the public convenience and necessity; and a concise description of the proposed acquisition. See 18 C.F.R. §157.5(a), 157.6(b)(2), and 157.6(b)(4). Further, Northern was required to make a good faith effort to provide notice of its Application to affected property interests owners known at the time of Northern's Application. See 18 C.F.R. §157.6(d). Northern contends it provided such notice to affected owners, with the notice

including a description of the proposed project, its location, and purpose. In response to Northern's Application, several timely and unopposed Motions to Intervene in the FERC proceeding were filed, including filings by several of the Defendants in this case. (Doc. 6-4 at 3-4 ¶¶ 6-9.) Many of those intervenors filed comments, protests, or both.

In connection with its Application efforts, Northern -- according to the affidavit of the Northern officer in charge of the matter – conducted a diligent search and inquiry of the records in Pratt, Kingman, and Reno counties, Kansas. See Affidavit of Glen R. Hass, Exhibit 1 ¶¶ 4-17. Once completed, Northern routinely updated its search and inquiry of the records to identify any and all affected interest owners within the Authorized Expansion Area. Id. at ¶ 18.

On June 2, 2010, the Commission granted Northern an Order Issuing Certificate ("2010 Certificate"), authorizing expansion of the certificated boundary of Northern's Cunningham Storage Field to include the Viola and Simpson Formations beneath the Authorized Expansion Area. (Doc. 1-2, at 31-32 ¶ 95(A)-(G)). On June 3, 2010, Northern accepted the 2010 Certificate and thereby agreed to comply with all conditions of the 2010 Certificate. (Doc. 6-6.). That same day, Northern initiated efforts to acquire the rights and interests encompassed by the 2010 Certificate and later described in Northern's Complaint in Condemnation as the "Property to be Taken," by issuing offers to all known interest owners within the Authorized Expansion Area to acquire the same by Agreement. See Exhibit 1 at ¶ 20-26.

As more fully set forth in Northern's Complaint in Condemnation, Northern has defined the "Property to Be Taken" as: (1) limited to the Viola and Simpson Formations; (2) limited to the acreage that lie under the Authorized Expansion Area; (3) as described in the 2010 Certificate; and (4) more particularly described as follows:

(a) right, title, and exclusive possession to the Viola and Simpson Formations;

(b) the right to retain possession, ownership, control of, and title to natural gas injected into the Cunningham Storage Field, which is located in the Authorized Expansion Area as personal property;

(c) any and all interests and rights related to or involving natural gas, gas liquids, gas condensate, and/or other hydrocarbons, minerals, and/or other gases, liquids, fluids or substances within the Viola and Simpson Formations, including, but not limited to, royalty interests, overriding royalty interests, working interests, revenue interests, and leasehold interests within the Viola and Simpson Formations underlying any portion of the Authorized Expansion Area, including any and all rights of any type or nature incident or appurtenant thereto;

(d) the right to enjoin, shut-in, and prevent production of natural gas, gas liquids, gas condensate, and/or other hydrocarbons, minerals, and/or other gases, liquids, fluids or substances from the Viola and/or Simpson Formations;

(e) the right to conduct testing and investigation prior to shut-in, including, but not limited to, evaluating liquid levels, gathering pressure information and data, and/or gathering gas samples through existing well bores; and

(f) the full right and authority to lease, sublease, sell, assign, transfer, and/or convey to others the Property To Be Taken, in whole or in part, or to encumber or grant a license to the same.

(See, e.g., Doc. 6 at 7.)

Each of Northern's June 3, 2010 offers were mailed via United States Postal Service with a return receipt requested and tracked via the United States Postal Service's online tracking system. See Exhibit 1, at ¶ 21.

Northern made efforts to acquire by agreement the Property to be Taken. See id at ¶¶ 18, 27-29(A)-(Q). Northern was able to acquire certain interests and rights within the Authorized Expansion Area by Agreement. See id. at ¶ 28; see also (Doc 1-5). Today, Northern continues to negotiate with certain interest owners within the Authorized Expansion Area. See Exhibit 1, ¶ 29(G). However, in large part, Defendants have elected not to respond to Northern's offers and

have not presented any counteroffer for Northern's consideration. See Exhibit 1, ¶¶ 29(A)-(F), 29 (H)-(Q).

On July 16, 2010, after failing to acquire or agree on a price for the certain property rights and/or interests of Defendants, Northern filed its Complaint in Condemnation identifying the Property to Be Taken and the Interests to be Taken. (Doc. 1.)

On July 23, 2010, consistent with the 2010 Certificate, Northern filed with the Commission its Storage Gas Containment Plan. See Storage Gas Containment Plan, attached hereto as Exhibit 2.

On October 25, 2010, consistent with the 2010 Certificate, Northern filed with the Commission, its first quarterly report regarding its Storage Gas Containment Plan. See Quarterly Report, attached hereto as Exhibit 3.

Northern has made efforts to contact and provide notice to potential interest owners. Northern has been unable to acquire by contract or otherwise agree with Defendants as to the just compensation to be paid for the Property to Be Taken. See Exhibit 1, ¶ 35.. Id. at ¶¶ 29-35.

Northern contends it has met the prerequisites for condemnation under the Natural Gas Act and it seeks an order confirming its legal right to condemn the property identified in the complaint.

II. *<u>Objections to Confirmation</u>*.

**A.** *Nash Oil & Gas, Inc. and Vision Investments of Pratt, LLC* **(Doc. 116).**

1. <u>Title to Storage Gas</u>. These defendants contend Northern may not condemn title to natural gas in the Expansion Area without conceding that the defendants hold title to such gas.

Defendants say [i]t is well settled that one cannot seek to condemn property that one already owns." Doc. 116 at 2 (*citing Dept. of Transp. v. Mehta*, 180 P.3d 1214, 1220 (Okla. Ct. Civ. App. 2008)). As long as Northern continues to assert title to storage gas in the Expansion Area, defendants argue, it may not condemn the gas. They argue a condemnor cannot claim beneficial ownership of land and at the same time assert that the condemnee owns any such interest; that condemnation proceedings cannot be used as a means to quiet title; and that the power to condemn "negatives ownership in the condemnor." *Citing Grand River Dam Authority v. Simpson*, 136 P.2d 879 (Okla. 1943).

The Natural Gas Act provides in part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h). *See also Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308 (1988) (storage facilities are a critical part of the transportation of natural gas); 18 C.F.R. § 284.1(a) ("transportation" includes storage).

The court concludes defendants' title argument does not preclude Northern from proceeding on its condemnation complaint. A final judgment has been entered in Pratt County District Court litigation involving Northern and producers and purchasers of gas in the Expansion Area. That judgment embodies a determination that Northern does not have title to any storage

6

gas that migrated to the Expansion Area prior to June 2, 2010.[1] Whether Northern concedes the issue or not, that ruling is binding in this litigation unless and until the Kansas Supreme Court reverses or modifies the judgment. As it stands now, Northern will have to pay just compensation to the owners of that storage gas in order to acquire title to it. As Northern points out, its complaint is drafted to seek condemnation of all property rights and interests necessary to carry out the requirements of the FERC Certificate and the Natural Gas Act, including any storage gas owned by the defendants in the Expansion Area. The "Interests to Be Taken" from the defendants, according to the complaint, include "[r]ight, title and exclusive possession to the Viola and Simpson Formations;" "[t]he right to retain possession, ownership, control of, and title to natural gas injected into the Cunningham Storage Field, which is located in the Authorized Expansion Area as personal property," as well as "[a]ny and all interests and rights related to ... natural gas ... within the Viola and Simpson Formations, including ... royalty interests,... and leasehold interests within the Viola and Simpson Formations underlying any portion of the Authorized Expansion Area, including any and all rights of any type or nature appurtenant thereto...." Doc. 1, ¶ 36. The FERC Certificate authorizes Northern to expand the certificated buffer zone of the storage field "to include the Viola and Simpson formation in Pratt and Kingman Counties, Kansas, as described in the body of this order." The property which Northern seeks to condemn, and which it has been authorized to condemn, includes any storage gas as to which others have title in the Expansion Area.

---

[1] The Pratt County District Court judgment is now on appeal to the Kansas Supreme Court. *Northern Natural Gas Co. v. ONEOK Field Servs. Co., LLC, et al.,* Sup. Ct. No. 104279. In *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, 2010 WL 3892227. *17 (D. Kan., Sept. 29, 2010), this court concluded that the collateral estoppel effect of the Pratt County judgment was limited to storage gas produced before the FERC Certificate issued on June 2, 2010.

Under Kansas law, Northern retains title to any of its storage gas that migrated out or that migrates to the Expansion Area *after* the date of the FERC Certificate, June 2, 2010. This court so found in *Northern Nat. Gas Co. v. L.D. Drilling, Inc., et al*, No. 08-1405 (D. Kan.). Assuming Northern owns a portion of storage gas now located in the Expansion Area, that fact does not preclude Northern from condemning any remaining or additional ownership interests held by others in storage gas or in native gas located there. It simply means Northern does not have to pay compensation to acquire title to the portion it already owns. Northern has been granted authority to acquire any remaining interests in the native and storage gas located in the Viola and Simpson formations in the Expansion Area. The reason for the general rule cited by defendants – that a condemnor must concede the title of the condemnee in property – is that there is an "irreconcilable inconsistency between an allegation by the condemnor *of the entire title* ... in himself, and the taking of the property of another by the proceeding," because condemnation rests upon necessity "and there can be no necessity to acquire what one already owns...." *Houston North Shore Ry. Co. v. Tyrrell*, 128 Tex. 248, 98 S.W.2d 786 (1936). But "a right or interest already owned in property may be increased ... by the exercise of eminent domain, or in other words, the mere fact that one already owns some right or interest in property is not a bar to acquisition by the exercise of eminent domain of the fee title to the same property or of some other increased interest therein." 26 Am.Jur.2d *Eminent Domain* § 101. Defendants' objection that Northern does not have authority to condemn storage gas located in the Expansion Area is denied.

2. <u>Good faith negotiations</u>. Defendants next argue that Northern failed to negotiate in good faith to obtain defendants' property rights, which they contend is contrary to Northern's

obligations under the June 2 FERC Order. The FERC Order included a statement that it was "incumbent upon ... [Northern] to make good faith efforts to negotiate ... for any needed rights." Doc. 6, Exh. 3, n.24. Defendants say Northern's offer to compensate Nash only $5,000 per well, when each well cost around $600,000 to complete, was not a good faith effort and does not satisfy Northern's obligation.

There is a split of authority as to whether the NGA makes "good-faith" negotiation a prerequisite of exercising condemnation authority. The statute contains no such express requirement; its terms are met when the holder of the certificate "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid" for the property. For that reason, a majority of recent decisions, including one from this district, have rejected claims that condemnation authority under § 717(h) depends upon proof that the condemnor engaged in "good-faith" negotiations. *See Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1257 (D. Kan. 2002) ("The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain."); *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed.Appx. 495, 2005 WL 1950679 (1st Cir. 2005) (rejecting requirement of good faith); *Columbia Gas Transmission, LLC v. Crawford*, --- F.Supp.2d ----, 2010 WL 4262045 (N. D. Ohio, Oct. 29, 2010) (noting split of authority and listing cases). *But see, e.g., Transwestern Pipeline Co. v. 17.19 Acres of Property*, 550 F.3d 770, 776 (9th Cir. 2008) (condemnor must establish that it engaged in good faith negotiations with the landowner). The court agrees with *Kansas Pipeline* that the plain language of the statute contains no requirement of "good faith" negotiations and that the authority of a condemnor under the NGA therefore does not depend

upon such a showing. The statutory requirement is satisfied upon a showing by the condemnor that it has been unable to agree with the owner on the amount of compensation.

Defendants appear to base their argument not upon the requirements of the NGA, but upon the Certificate granted by FERC, which contained a footnote stating in part:

> Under section 7(h) of the NGA, a certificate of public convenience or necessity confers on the certificate holder the right to acquire property rights by exercising the right of eminent domain in a court action if the certificate holder cannot acquire the property rights by contract or is unable to agree with the property owner on the amount of compensation. It is incumbent upon the applicant to make good faith efforts to negotiate with landowners for any needed rights. However, if the parties cannot reach agreement, issue of compensation for land taken by a pipeline under the eminent domain provisions of the NGA are matters for state or federal court.

Doc. 6, Exh. 3, p. 8, n.24.

Northern's response, among other things, challenges FERC's authority to impose any requirements beyond those contained in the NGA. *But cf.* 15 U.S.C. § 717f(e) (Commission may attach such reasonable terms and conditions as the public convenience and necessity require). The court need not address the extent of FERC's authority, however, because it concludes FERC did not condition this certificate upon Northern first engaging in "good faith" negotiations. The court notes the apparent lack of any FERC regulation or precedent requiring a condemnor to establish that negotiations were conducted in good faith. *See e.g., Chestnut Ridge Storage LLC*, 128 FERC P 61210, 2009 WL 2750934 (Aug. 31, 2009) ("While we encourage parties to negotiate in good faith to reach easement agreements, we recognize that if the parties are unable to come to an agreement, then a certificate holder will be able to employ eminent domain to obtain necessary property rights under section 7h of the NGA."); *Midwestern Gas Transmission*

*Company*, 116 FERC P 61182, 2006 WL 2461766, *15 (Aug. 25, 2006) ("In situations such as this, where, for whatever reasons, the pipeline company and property owners cannot agree on the terms and amount of compensation ... section 7(h) of the NGA grants powers of eminent domain to the certificate holder."). More to the point, the Certificate issued to Northern expressly set forth the conditions upon which the grant of authority was based. Doc. 6, Exh. 3, p. 32, Section (B). Those conditions do not include a requirement of good faith in negotiations by Northern. Defendants do not dispute that Northern contacted the affected owners and extended them some offer of compensation. Although defendants view the offer as plainly inadequate, that allegation does not affect Northern's authorization to proceed with condemnation. It is clear from undisputed facts that Northern has been unable to acquire the property by contract and is unable to agree with the defendants on compensation. That is all the NGA and the FERC Certificate require insofar as Northern's authority to proceed is concerned. The question of what compensation is due for the taking of the property is a matter to be determined in this action. *See Rockies Express Pipeline, LLC v. 123.62 Acres*, 2008 WL 4493310 (S.D. Ind., Oct. 1, 2008) (although defendants "frame their argument as a failure by [condemnor] to engage in good faith negotiations, the heart of their dispute lies in the amount of compensation [defendants] believe they are entitled to. Such a dispute is more appropriately raised during the just compensation stage of these proceedings."). Defendants' second objection is therefore denied.

**B.** *Huff Landowner Group* **(Doc. 117).**

    1. <u>Good faith negotiations</u>. The Huff Landowner Group ("Huff") first asserts that a lack of good faith in negotiations by Northern precludes condemnation. For the same reasons discussed above, the court denies this objection.

2. <u>Extent of Interest Subject to Condemnation</u>. Huff's second objection asserts that Northern is attempting to exceed the scope of the condemnation authority granted in the FERC Certificate. It argues Northern is asking the court to grant it "nothing less than fee simple to the Viola and Simpson formations," but Huff points out that FERC said it was only allowing Northern to expand the field's buffer zone, and the order expressly prohibited Northern from injecting any storage gas into the Expansion Area. Similarly, it says Northern is seeking the right to use the surface of the Huff property, but Huff argues that FERC prohibited Northern from constructing any facilities in the Expansion Area. "The only interest that Northern is entitled to condemn," according to the Huff group, "is an easement for the purposes of mitigating natural gas migration from the Cunningham Storage Field, as described by the Certificate Order." Doc. 117 at 7.

For its part, Northern first states that "[t]he parties' disagreements regarding the scope of Northern's condemnation authority cannot preclude the Court's acknowledgment of Northern's legal right to condemn as authorized by the 2010 Certificate." Doc. 154 at 14. Moreover, it says it "must have exclusive possession of Defendants' property, rights, and/or interests named in the Complaint in order to operate the newly certificated area comprising the Cunningham Storage Facility and implement the necessary first steps of its Storage Gas Containment Plan." *Id*. at 15. Northern asks the court to confirm its authority to condemn the "Property to be Taken" described in the complaint.

As noted in *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255 (10th Cir. 1989), the exclusive avenue for judicial review of a FERC order is a timely appeal to the appropriate circuit court of appeals. *Id*. at 261 (*citing* 15 U.S.C. § 717r(b)). As a result, a district

court may not entertain any collateral attack upon a FERC order; its only function in a condemnation proceeding based on a FERC Certificate is to provide for enforcement of the FERC order. *Id*. at 264.

FERC granted Northern's request to expand the certificated boundary of the Cunningham Storage Field, authorizing "the expansion of Northern's certificated buffer zone to include the Viola and Simpson formation" as more particularly described in the order. Doc. 355, Exh. 2, p. 32. The order did not more specifically discuss the nature of the property interest Northern was authorized to obtain. The statute itself provides that a certificate holder may use eminent domain if it is unable to acquire "the right-of-way" to operate or maintain a pipe line and "the necessary land or other property" to locate equipment necessary to operate the pipe line. Most cases dealing with the use of eminent domain for gas storage facilities speak in terms of granting an easement to use the property for such purposes. In *Columbia Gas Transmission Corp. v. Exclusive Gas Storage*, 776 F.2d 125 (6th Cir. 1985), the court said "underground facilities fall within the intent of the legislature to provide the use of eminent domain to acquire the right-of-way for stations or equipment necessary to the proper operation of gas pipelines," and that "the Act authorizes the invoking of the power of eminent domain to seek a gas storage easement." *Id.* at 129. This is consistent with the general rule that "the right obtained by eminent domain to introduce gas into geological strata and store it there amounts to no more than an easement, at least where the evidence does not show that the reservoir is structurally insufficient to prevent the gas from leaking to the surface." 26 Am.Jur.2d, Eminent Domain, § 848.

The court agrees with defendants that insofar as storage rights are concerned,[2] Northern's

---

[2] By contrast, the rights to any natural gas or other hydrocarbons located in the Viola and Simpson formations, which Northern also seeks in its condemnation complaint, would require

13

grant of authority to obtain and use the Viola and Simpson formations is essentially an easement rather than a fee title. The only practical consequence of this distinction, however, would likely be that an easement, unlike a fee title, ordinarily terminates when its underlying purpose ceases to exist.[3] *See* Am.Jur.2d Easements and Licenses § 96 ("An easement granted for a particular purpose normally terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment."). Northern does not appear to dispute this point, inasmuch as it does not allege that the acquired storage rights will extend in perpetuity. Rather, ¶ 38 of the complaint indicates the storage easement will expire if FERC-sanctioned gas storage operations are no longer conducted in the Cunningham Storage Field and FERC authorizes abandonment of the field. Nor has Northern shown that an unqualified fee interest as opposed to an easement in the underground formations is necessary for operation of the Expansion Area as part of the storage field. Such a showing would be hard to make, given that Northern has acquired storage rights to a significant portion of the Expansion Area through terminable storage leases. *See* Am.Jur.2d Eminent Domain §842 ("condemnation passes only such an estate or interest as is required to accomplish the purpose of condemnation."). *See also* Doc. 6-3, Northern's FERC Application at 17 (" Northern requests that the Commission approve the proposed Extension

---

that Northern acquire the title to such property rather than merely an easement in it.

[3] *See also* Am.Jur.2d Eminent Domain § 842 (If a condemnor takes an easement, the owner retains title to the land in fee and has the right to make any use of it that does not interfere or is not inconsistent with public use. Thus, although the condemnor is entitled to exclusive use of the land condemned, the scope of condemnor's use of easement will be limited to the extent reasonably necessary for the purpose served by the taking, so that the landowner's right to use the easement area is as great as possible while remaining reasonably consistent with the purpose of the taking. On the other hand, when land has been acquired for the public use in fee simple absolute by the exercise of the power of eminent domain, the former owners retain no rights in the land.) [footnotes omitted]

14

Area so that Northern can protect the integrity of its certificated storage operations by acquiring additional storage leases as expeditiously as possible." )

Northern's acquisition of "all rights ... appurtenant to" the gas and mineral interests in the Viola and Simpson formations would include the right to use the surface of the land to the extent reasonably necessary to operate and maintain the storage field. Defendants argue this is inconsistent with Northern's condemnation authority because FERC said Northern was not authorized to inject gas into the Expansion Area or to construct any facilities there. But FERC clearly expressed approval of portions of Northern's containment plan that would necessarily include surface access rights, such as Northern's proposal to monitor pressures in the buffer zone and, if necessary – and subject to FERC's approval – implement a water injection program.[4] And FERC was undoubtedly aware that a grant of minerals ordinarily carries with it an implied right to enter and use the surface of the property to the extent reasonably necessary to develop the interest granted. Similarly, "[e]very easement carries with it the right to do such things as are reasonably necessary for full enjoyment of the easement...." Am.Jur.2d, Pipelines, § 33. Likewise, the right to use the formations specified by FERC necessarily implies a right to use the surface of the land to the extent reasonably necessary to operate and maintain the Simpson and Viola formations as a buffer zone for the Cunningham Storage Field. FERC was also surely aware that such surface rights are routinely included in gas storage lease agreements, including those entered by Northern covering acreage within the Expansion Area. *Cf. Trotter v. Wells Petroleum Corp.*, 11 Kan.App.2d 679, 732 P.2d 797 (1987) ("[A]n oil and gas lessee or mineral

---

[4] Northern's plan also proposed bringing shut-in wells into production or installing offset wells in the event third party operators chose to drill Viola production wells adjacent to the Expansion Area. FERC criticized this latter proposal as "reactive," saying a more "robust, aggressive, and proactive plan" was needed to effectively reverse the flow of gas out of the field.

owner usually is entitled to enjoy reasonable surface use[] necessary or convenient for his exploration and development operations, absent express provision to the contrary in the lease or instrument severing the mineral interest."); *Powell v. Prosser*, 12 Kan.App.2d 626, 753 P.2d 310 (1988) (rights of "ingress and egress" are implied as a necessary incident of mineral ownership).

Defendants argue it is error to use "Northern's self-authored 'containment plan'" to determine the scope of the condemnation authority. Doc. 157-1. The court agrees that it is FERC's actual grant of authority, not Northern's plan, that controls the extent of Northern's condemnation authority. But FERC's grant of authority must be construed in the context of its order, including FERC's clear endorsement of steps that necessarily contemplate Northern having surface rights in the Expansion Area. As discussed above, such rights are presumed to be part of an easement for the operation of a storage facility. It would be an unnatural and unreasonable construction of the order to say that it denies Northern all surface rights appurtenant to the use of the Expansion Area's Viola and Simpson formations for storage purposes.

Against this background, FERC's authorization for "expansion of Northern's certificated buffer zone to include the Viola and Simpson formations" in the Expansion Area must be construed to include the rights appurtenant to exclusive possession and use of these formations as part of the storage field, including the aforementioned right to use the surface of the land to the extent reasonably necessary to operate and maintain the storage field. *Cf. Mississippi River Transmission Corp. v. Tabor*, 757 F.2d 662, 672 (5th Cir. 1985) (when a pipeline company must expropriate property for the creation of a gas storage reservoir, "[c]ompensation is payable for the value of the recoverable natural gas and condensate remaining in the reservoir, the value of the underground storage right, and the value of the servitude rights on the surface."). Of course,

construction of any facility by Northern within the Expansion Area would require FERC's approval, and would also require Northern to pay damages at that time to any particular landowner effected by Northern's use of the surface. With the foregoing qualification on the nature of the interest to be taken by Northern, defendants' objection is denied.

**C. *L.D. Group Defendants*. (Doc. 117).**

1. <u>Good faith negotiations</u>. The L.D. Group defendants likewise object on the basis of a lack of good faith by Northern in negotiations. The court denies this objection for the reasons previously stated.

**D. *Five Star Energy. Inc.* (Doc. 118).**

1. <u>Extent of Interest Subject to Condemnation</u>. Defendant Five Star says its main objection is plaintiff's "failure to limit its request for authority to the authorized expansion area...." Doc. 118 at 3. Five Star notes that certain sub-paragraphs in the complaint listing the interests to be taken refer, without qualification, to possession of "the Viola and Simpson formations." It contends Northern is seeking the right to test or shut in wells outside the storage field and the Expansion Area. *id*. at 4. The introductory clause of ¶36 of the complaint notes that, by definition, the property to be taken is limited to that necessary "to allow Northern to use the Viola and Simpson Formations underlying the Authorized Expansion Area...." The court construes this modifier to apply to all of the ensuing subparagraphs of ¶36, including any references to the Viola and Simpson formations. The complaint does not seek to take property outside of the Authorized Expansion Area.

Five Star next contends Northern's request for "the right to retain possession, ownership ... and title to natural gas injected into the Cunningham Storage Field" is not authorized in the

17

FERC Certificate. The complaint actually seeks the right to possession and title of any such gas "which is located in the Authorized Expansion Area as personal property." Doc. 1, ¶ 36(b). The condemnation of any interest held by others in natural gas in these formations under the Expansion Area is a necessary component of FERC's decision to allow Northern to use the Expansion Area as a buffer zone. The right to obtain any gas currently in the Expansion Area's Viola and Simpson formations is necessarily encompassed within FERC's authorization to include that area in the field's certificated boundary.

    2. <u>Good faith negotiation</u>. Defendant contends Northern failed to engage in good faith negotiations for the property. This objection is denied for the same reasons previously given.

    3. <u>Unable to Agree on Compensation</u>. In a variation of its "lack of good faith" argument, Five Star contends Northern has failed to show it "cannot acquire" the property by contract or "is unable to agree with the owner ... to the compensation to be paid" for the property. Defendant argues that Northern made "one boilerplate offer of a mere $10," which was based upon Northern's "self-serving and unsupported assertion that native hydrocarbons are not economically recoverable on Five Star's land." Doc. 118 at 8. Defendant argues Northern "cannot establish that Five Star would not consider a reasonable offer" from Northern, and it argues Northern's effort to acquire the property fails to satisfy the requirements of the NGA. This argument fails for reasons previously stated. Defendant does not dispute that Northern made an offer for its property. Defendant believes the offer is inadequate. The statutory requirement of the NGA is satisfied upon a showing by the condemnor that it has been unable to agree with the owner on the amount of compensation, and Northern has made such a showing. Because the parties cannot agree, the question of what compensation is due for the taking of the property is a

18

matter to be determined in this action.

**E.  *Val Energy, Inc. and Val Energy Interest Holders*.  (Doc. 122).**

These defendants rely on the same arguments already raised by others, including that Northern must concede defendants' title to the natural gas in the Expansion Area before proceeding with condemnation, and Northern's alleged failure to negotiate in good faith for the property.  The court denies these objections for the same reasons previously stated.

**F.  *L.D. Group Defendants.* (Doc. 123).**

The L.D. Group defendants likewise assert a lack of good faith negotiations by Northern, which the court denies for the reasons previously stated.

**G.  *Answering Landowner Defendants.* (Doc. 125).**

1. Title to Storage Gas.  These defendants assert that Northern may not condemn without first conceding defendants' title to natural gas under their property.  This objection is denied for the same reasons previously stated.

2. False Affidavit / Inadequate Search.  The defendants next contend Northern did not make a reasonably diligent search of records because such a search "would have found the Grace Brown Estate probate and the Leroux Estates probate." Doc. 125 at 1.  This apparently refers to Northern's listing of a deceased individual, Grace Brown, as an interest owner in one of the defendant tracts, and its listing of "[t]he unknown heirs ... of Alice Leroux" as interest owners in another.  The defendants say probate records for these two individuals "are all part of the public record in the Probate Court in Pratt County, Kansas," *Id*. at 2, and they argue, without any citation to authority, that the case should be dismissed until Northern performs a diligent search and joins the proper parties.  Defendants also assert that an affidavit by Northern's counsel

stating that a diligent search was made was a "false affidavit" and that counsel's *pro hac vice* status "should be revoked for misleading the court...." *Id*. at 1.

Rule 71.1 of the Federal Rules of Civil Procedure requires the plaintiff to conduct "a reasonably diligent search of the records" to add as defendants, prior to any hearing on compensation, any person who may claim an interest in the property. Fed.R.Civ.P. 71.1(c)(3). The rule by its terms requires reasonable diligence, not complete accuracy. Even assuming the two matters cited by defendants constituted errors on Northern's part, the allegation fails to show a lack of reasonable diligence.[5] Defendants' objection is denied.

III. *Conclusion*.

Northern's Motion To Confirm Condemnation Authority (Doc. 5) is GRANTED. Defendant Huff Landowner Group's Motion for Leave to File Sur-reply (Doc. 157) is GRANTED; the court has considered the attached sur-reply in connection with the pending motions. IT IS SO ORDERED this __15th__ Day of March, 2011, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

---

[5] In response to this objection, Northern provides an affidavit stating that its search revealed an unreleased mortgage taken by Grace Brown and Brown Brothers, a Kansas General Partnership, and it explains why it included her interest. Doc. 154-2, ¶8. It also explains why it concluded that the interests held by Alice Leroux's heirs was unclear.