# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10-1232-WEB-DWB ) |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas and as further described herein; | ) ) ) ) ) ) |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman County, Kansas, and as further described herein, et al. | ) ) ) ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff, Northern Natural Gas Company (Northern) filed a Motion to Appoint a Commission to Determine Just Compensation (Doc. 170) in this federal condemnation case. Responses and briefs in opposition to the motion were filed by the Huff Landowner Group (Doc. 173), Five Star Energy, Inc. (Doc. 174), L.D. Drilling, Inc, Nash Oil & Gas, Inc. and Val Energy, Inc. (Doc. 175), and the Group B Defendant Landowners (Doc. 176.) Northern has filed a Consolidated Reply in

support of its motion for appointment of a commission. (Doc. 178.)[1]

Northern also filed a Motion to Set Oral Argument on its Motion to Appoint a Commission. (Doc. 182.) The Huff Landowner Group filed a brief in opposition to the request for oral argument. (Doc. 184.)

After reviewing the motion for appointment of a commission, the assigned trial judge, Hon. Wesley E. Brown, Senior United States District Judge, entered an Order referring this motion to the undersigned U.S. Magistrate Judge for a Report and Recommendation. (Doc. 185.) In that Order, Judge Brown directed that the magistrate judge could conduct any hearings, including evidentiary hearings, as were deemed necessary in connection with the Report and Recommendation.

The undersigned magistrate judge thereafter set oral argument on the motion for appointment of a commission, effectively granting Northern's motion for oral argument. An order granting that motion is being filed along with this Report and Recommendation. The parties appeared and argued the motion on May 11, 2011. At the hearing, Northern offered NNG Exhibits 1-21 and the Huff Landowner Group offered two exhibits, all of which were admitted without objection.

---

[1] Northern also renewed it request for appointment of a commission in its recently-filed Amended Complaint. (Doc. 188, at 70-71.)

DISCUSSION

I.   Legal Basis for Appointment of a Commission.

When a party makes a timely jury demand in a federal condemnation proceeding, the issue of compensation is to be determined by a jury, "unless the court appoints a commission." Fed. R. Civ. P. 71.1(h)(1)(B). "If a party has demanded a jury, the court may instead appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons." Fed. R. Civ. P. 71.1(h)(2)(A). In this case, there has been a timely demand for a jury trial by several defendants. *See* Doc. 90, at 10; Doc. 98, at 10; Doc. 106, at 19; Doc. 107, at 20; Doc. 108, at 14; and Doc. 114, at 9. Northern, however, urges the Court to appoint a three-person commission to determine the issue of compensation because of the factors set out in Rule 71.1(h)(2)(A).[2]

---

[2] This report and recommendation addresses the defendants' right to a jury trial pursuant to the provisions of Fed. R. Civ. P. 71.1. Defendants, however, have asserted (in a footnote to their response) that they have a Seventh Amendment right to a jury trial. (Doc. 175, at 2 n. 2.) From the brief statement in the footnote, it appears that their Seventh Amendment claim is based on the fact that defendants filed counterclaims in this condemnation case raising legal issues other than condemnation. However, the Court has now dismissed those counterclaims from this condemnation case without prejudice to their renewal in a separate action. (Doc. 187.) Accordingly, it appears that the issue of a jury trial versus a commission in this federal condemnation case turns solely on the provisions of Rule 71.1. There is no constitutional right to a jury trial in a condemnation proceeding. Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 42 L.Ed. 270 (1897); United States v. Reynolds, 397 U.S. 14, 18, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).

The Tenth Circuit has had several occasions to consider the appointment of a commission in federal condemnation cases under Rule 71A, which was an earlier version of Rule 71.1.[3] The first case was United States v. Theimer, 199 F.2d 501 (10th Cir. 1952). In Theimer, the government sought to condemn an interest in three tracts of land adjacent to Tinker Air Field in Oklahoma City, Oklahoma. One tract was 71 acres, and the other two tracts were 12 acres and one acre, respectively. After reviewing the history of the implementation of Rule 71A, the Court concluded that

> the parties to a condemnation proceeding are ordinarily entitled to a jury under Rule 71A(h) as a matter of right and that where demand is made for the same the judge must grant a jury trial, unless under the facts as they appear in the case because of the character, location, or quantity of the property to be condemned, or for other reasons revealed by the facts of the case, the interest of justice warrants the submission of question of value and compensation to a commission.

199 F.2d at 503-04. Because the trial judge made no statement or finding of fact as to what prompted it to conclude that the interest of justice required the extraordinary procedure of appointment of a commission, the Court held that the trial court improperly denied a jury trial and the case was reversed.

---

[3] Rule 71A became effective August 1, 1951, and was amended and re-designated as Rule 71.1 as part of the general restyling of the federal rules effective December 1, 2007.

Two months later, the Circuit affirmed another case from the same trial judge where he had appointed a commission rather than allow a jury trial in a condemnation case involving an 80 acre tract in Alfalfa County, Oklahoma. United States v. Wallace, 201 F.2d 65 (10th Cir. 1952). In affirming the appointment of a commission, the majority held that the case was factually distinguishable from Theimer because the land to be condemned was a long distance from a Federal court town, it would be expensive to take a jury to view the land, it would be inconvenient for the local witnesses to travel to the Federal court town to testify, and the land was of a peculiar nature in that it had a value for hunting and fishing. 201 F.2d at 66-67. Judge Pickett, dissenting, disagreed, noting that commissions were intended to be used only in extraordinary circumstances in difficult and complicated cases. Since the present case involved only a single tract of land with no improvements, Judge Pickett concluded that "[i]t is difficult to conceive of a more simple condemnation case" and by allowing use of a commission the court was "laying the foundation for the establishment of the right of reference [to a commission] as the rule, not the exception." 201 F.2d at 67-68.

Two months later, the Circuit addressed yet another condemnation case where the court appointed a commission rather than allow a jury trial in a

condemnation proceeding. United States v. Waymire, 202 F.2d 550 (10th Cir. 1953). The court began by reiterating that where a timely jury demand is made, a party is ordinarily entitled to a jury trial as a matter of right on the issue of just compensation; however, "in the exceptional case where extraordinary circumstances or conditions exist with respect to the character, location, or quantity of the property to be condemned, or for other reason in the interest of justice," the court has discretion to appoint a commission to determine just compensation. 202 F.2d at 552. In affirming appointment of a commission, the majority noted that multiple tracts were involved in the taking, they were located far from a federal courthouse, and the land varied in kind, character, and adaptability, presenting multiple circumstances calling for consideration of various elements in arriving at just compensation. 202 F.2d at 552. Again the dissent, this time by Judge Huxman, saw no extraordinary or unusual circumstances in the case which would warrant the invocation of the extraordinary provision to appoint a commission, and he warned that "[u]nless we take care, trial by jury will become the exception and trial by commission the rule in condemnation proceedings, contrary to the spirit and intent of the rule." 202 F.2d at 555.

Finally, in United States v. Hardage, 58 F.3d 569, 576 (10th Cir. 1995), the Circuit concluded that all the parties had led the district court astray as to the

6

applicable law concerning use of a commission.  The Circuit reiterated that any party to a condemnation proceeding is ordinarily entitled to a jury trial as a matter of right to fix the value of the property taken where demand is made as provided in the rule, citing Waymire and Theimer.  *Id.*

One legal commentator has noted that the Tenth Circuit's requirement of extraordinary facts or circumstances to justify appointment of a commission is not being followed by most courts who instead tend to view the rule as giving the court "broad discretion" to choose between a jury and commission.  12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 3051(2d ed. 1987).  The commentator further suggests that even courts giving lip service to the Tenth Circuit's view that a commission is proper only in unusual cases, do not require much evidence to convince them that a case is unusual, citing Wallace and Waymire.  *Id.*

In a recent case involving condemnation of underground gas storage rights, this court found that no extraordinary circumstances or conditions existed which made it necessary to appoint a commission rather than allow the case to proceed to a jury trial.  Southern Star Central Gas Pipeline, Inc. v. 842 Mineral and Leasehold Acres of Land in Anderson County, Kansas, Case No. 08-1313-MLB, Memorandum and Order of March 3, 2010 (Doc. 78).  Southern Star involved

7

condemnation of mineral rights in a specified subsurface geological formation underlying fourteen separate tracts comprising 842 acres, with approximately twenty separate interest owners or parties who may claim interests in the property being condemned. Only one defendant-landowner requested a jury trial. After reviewing the Advisory Committee Notes to Rule 71.1, the court concluded that none of the four advantages discussed in the notes for use of a commission in cases involving large projects were applicable.[4] While the court refused to appoint a commission, it did note that "the issue of just compensation of oil leases is more complex than the issue of just compensation of a house or a single tract of land." (Case No. 08-1313-MLB, Doc. 78, at 5.) Also, experts for both parties acknowledged the complexities involved in estimating oil reserves and interpreting the technical data related to the properties. The court concluded, however, that the parties could present the case in a manner that a jury could understand with the assistance of their respective expert witnesses. Ultimately, the case was tried to a jury.

---

[4] The four advantages discussed by the court were: (1) providing uniformity and consistency of awards for landowners which also leads to faster settlements; (2) allowing landowners to attend the proceedings without traveling large distances; (3) avoiding the difficulty of transporting jurors long distances to view the premises; and (4) reducing the burden on the courts.

## II. The Parties' Arguments.

Northern argues that this is clearly a complex condemnation case involving at least 9,000 acres in 66 separate tracts ranging in size from 1½ acres to 320 acres, located in three separate Kansas Counties (Kingman, Pratt and Reno), with approximately 150 owners or claimants including mineral owners, surface owners, royalty interest owners, working interest owners and lienholders. At the hearing, Northern further stated that it had recently made offers to the owners concerning additional rights it seeks to acquire in order to construct and operate a waterflood operation in connection with a containment plan approved by the Federal Regulatory Energy Commission (FERC). Northern stated that if it is unable to obtain agreements with the owners about these rights, it would be filing an amended complaint. If that is done, Northern stated that the condemnation would involve 89 tracts, 174 owners (21 of whom are not currently parties in the case) and 9,300 acres. It would then involve condemnation of both surface and subsurface rights.

Defendants the Huff Group first suggested that it was premature to decide the motion concerning appointment of a commission until it is clear precisely what interests are being taken in the condemnation. Presumably this would not be known until Northern files an amended complaint (assuming agreements cannot be

reached with the owners). The Huff Group also argued that this case can be readily tried to a jury since the landowners to date are mainly represented by three law firms, and the fact that Northern has made the same offer of settlement to each landowner belies the claim that there are many differences between the interests of the various owners. Finally, there is no indication that there will be a fight between the landowner defendants and producer defendants concerning issues critical to the condemnation action. Attorneys for other landowners also agreed with the position of the Huff Group, noting that prior cases concerning the Cunningham Storage Field have been tried to juries without any particular difficulties.

Attorneys for L.D. Drilling also argued that a commission was not justified in this case. As to the subsurface taking, there will be no reason to have the jury transported to the Field because there will be nothing for the jury to "view." The landowners and producers all have indicated that it is not a burden for them to appear in Federal Court in Wichita in this case, so distance from the field is not important in that regard. The producers also believe that there are no issues in dispute concerning the condemnation as between defendant landowners and defendant producers. Finally, the costs and expenses of any commission will presumably be substantial and this may have a chilling effect on the subject

landowners and producers.

III.     Discussion.

Since the oral argument on this motion, Northern has filed its Amended Complaint (Doc. 188), along with its supplemental motion to confirm condemnation authority.  (Doc. 202, 203.)  The Amended Complaint describes the "Property to Be Taken"[5] as well as a new category of "Property to Be Taken to Implement Water Injection Program."[6]  (Doc. 188, at 59.)  Thus it now appears that the full extent of property that is subject to this condemnation action has been sufficiently identified so that there is no longer any reason to defer a decision on Northern's motion for appointment of a commission as suggested by defendants.[7]

---

[5]  The "Property to be Taken" is described on Exhibit I to the Amended Complaint. While most of that property is already the subject of Northern's initial Complaint (Doc. 1), Northern has now added two tracts not previously included -- tracts 1232611 and 3152711.  These were not included in the initial Complaint because Northern believed that they could be acquired by agreement.  (Doc. 188, at 49 n. 1).

[6]  The "Property to be Taken to Implement Water Injection Program" is described on Exhibit J to the Amended Complaint.  That described property is to be used for the installing of water withdrawal and injection wells, transporting water from withdrawal wells to injection wells, re-pressuring the expansion area, installing electrical and telecommunication lines and installing any other auxiliary and appurtenant installations and facilities.  (Doc. 188, at 61.)

[7] Defendants also argued that any decision on the motion to appoint a commission should be deferred until the court had ruled on Northern's Motion to Confirm and on Northern's motions to dismiss and strike.  *See e.g.*, Doc. 173, at 1.  However, the court has now ruled on those motions, *see* Doc.183, 187, therefore that reason to delay ruling is also moot.  Finally, defendants argue that any decision on the motion should be deferred until the Kansas Supreme Court has ruled on the pending appeal in the Pratt County Case.

While courts in other circuits may not agree with the Tenth Circuit's view of when it is appropriate to appoint a commission, *see e.g.*, 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 3051(2d ed. 1987), this court is bound by the decisions of the Tenth Circuit. Thus, as outlined in Theimer, Wallace, Waymire and Hardage, a party who demands a jury trial in this federal condemnation action will ordinarily be allowed to present its case to a jury unless certain extraordinary circumstances are present in this case which demonstrate that the interests of just require the submission of the question of value and compensation to a commission.

Addressing first the specific factors outlined in Rule 71.1 -- the character, location or quantity of the property to be condemned -- the Court believes that the location of the property in this case is not so far from the federal courthouse in Wichita, Kansas, to constitute any burden on any of the parties to this case. Nor would it be a burden to have the jury view the property if it was determined that such viewing of the surface was important. Therefore, the property's location

---

(Doc 173 at 1-2.) While the ruling by the Kansas Supreme Court will be important in determining compensation in this condemnation case, there is no reason to defer the process to appoint the commission, and the court can regulate the timing of submission of the matter for decision by the commission, if necessary, to allow for any ruling by the Kansas Supreme Court. Also, since the parties have indicated a desire to conduct discovery in this case, the commission will not be in a position to commence work until that discovery has been completed and any discovery disputes (which appear inevitable in this case) have been resolved by the court or an assigned magistrate judge.

alone does not weigh in favor of requiring a commission rather than a jury.

However, the character and quantity of the property to be condemned in this case are factors that appear to favor appointment of a commission. As noted by Judge Belot in <u>Southern Star</u>, the issue of just compensation of oil leases is more complex than the issue of just compensation of a house or a single tract of land. Where the property to be taken involves underground strata, and where issues concerning valuation are directly related to determination of the amount of native gas located in those formations, the character of the property to be taken is so complex that various types of expert testimony will undoubtedly be required in order to reach a proper determination of value. Moreover, where the strata to be taken stretches over a substantial area -- in this case 9,300 acres -- it is far more likely that differences will be evident as between various tracts being taken. This is confirmed by the testimony presented in prior hearings in the consolidated Case No. 08-1405-WEB-DWB, where Northern's own experts acknowledge that native gas is present in different concentrations across the area involved in the condemnation.[8] Thus when the character and location of the property is examined,

---

[8] The FERC, in its June 2, 2010 Order, found that storage gas had migrated beneath properties to the North of the boundaries of the Cunningham Storage Field, but concluded that the concentration of storage gas versus native natural gas varied in different areas of the property subject to its order. *See* Case No. 08-1405-WEB-DWB, Doc. 335-2, at 10 ¶ 27. After gathering further information, Northern's expert witness concluded that some of the property which was the subject of the initial claims in Case

it appears that value determinations cannot be made uniformly by applying some simple formula to all the tracts sought to be condemned. This fact, tied with the recently-added request to condemn surface property in some of the tracts, including condemnation of existing well bores, shows that a determination of value must be made on a tract-by-tract basis depending on the varying facts related to each separate tract. This weighs in favor of submission of the issue of value to a commission rather than a jury. While the court may not be convinced that multiple jury trials would be necessary in order to reach a determination of value were the case to be tried to a jury, it certainly will be easier and much more efficient for a commission to gather the necessary information and distinguish between factors applicable to each specific tract of property being condemned.

Finally, the facts clearly establish that the character and quantity of the property involved in this case far exceeds the character and quantity of property involved in any of the above-referenced condemnation cases from the circuit or

---

No. 08-1405 -- known as the Section 28 properties -- should not have been included in the case because wells in that section were not producing any storage gas (and thus must have been producing only native natural gas). *See* Case No. 08-1405, Doc. 394 (Tr. 10/06/2010 hearing), at 147. As a result, Northern has sought permission to filed a Second Amended Complaint which would remove the Section 28 properties from the claims in Case No. 08-1405. (Doc. 390, at 3 ¶¶ 7-8).

from this court.[9] Even under the standards set by the above-referenced Tenth Circuit cases, this is far from a simple condemnation case. The facts support a finding that this is an exceptional proceeding involving extraordinary circumstances that are similar in nature to those experienced in large governmental condemnations such as the TVA project. These large projects were specifically considered by the drafters of Rule 71A, now Rule 71.1, when provision was made for appointment of a commission to determine value in federal condemnation proceedings.

IV.     Conclusion and Recommendation.

Because of the complexity of issues concerning valuation of the properties involved in this condemnation action, the Court believes that the interests of justice warrant the submission of the question of value and compensation to a commission in this case. Because valuation in this case may well turn on complicated expert issues, a commission may be composed of persons with specialized knowledge

---

[9]

| | Acreage | Tracts | Owners | Type |
|---|---|---|---|---|
| This case | 9,300 acres | 89 | 174 | Subsurface & Surface |
| Theimer | 84 acres | 3 | Unknown | Surface |
| Wallace | 80 acres | 1 | Unknown | Surface |
| Waymire | Unknown | Multiple | Unknown | Surface |
| Southern Star | 820 acres | Unknown | 20 | Subsurface |

15

such as a lawyer, a geologist and/or petroleum engineer and a real estate appraiser. *See e.g.*, 1985 Advisory Committee Notes, Rule 71.1. While the parties will undoubtedly have experts in some of these fields of study, commissioners with a specific education and/or background in those areas will be more readily able to assess and distinguish the relevant factors that must be considered in arriving at a determination of value than would a jury. Furthermore, a commission can establish procedures for the taking of testimony applicable to the area as a whole and then set any additional sessions that may be necessary in order to receive evidence only applicable to a single tract or area, thus making the trial process more efficient and practical for all parties involved. Of course, all legal issues other than that of value and compensation will be resolved by the court, and the timing of discovery and resolution of any discovery disputes will be resolved by the court or by an assigned magistrate judge.

In making its recommendation, the court is cognizant of the potential costs that may be incurred by appointment of a commission in this case and has addressed this issue with the parties during the oral argument. While this is a genuine concern, at the oral argument Northern acknowledged that it expected to pay the "lion's share" of the costs associated with the appointment and use of a commission. (Doc. 189, Tr. 5-11-2011 Hearing, at 95.) The Court believes that it

has the authority in approving compensation of the commission to fairly allocate the costs in such manner that they will not unfairly burden any party to this condemnation action.

IT IS THEREFORE RECOMMENDED that the Court appoint a three-person commission to determine compensation to be paid in this condemnation action pursuant to Fed. R. Civ. P. 71.1(h)(2)(A), along with up to two additional alternate commissioners as allowed by Fed. R. Civ. P. 71.1(h)(2)(B), and that the commission be granted the powers of a master under Fed. Rule Civ. P. 53(c). Fed. R. Civ. P. 71.1(h)(2)(D).

IT IS FURTHER RECOMMENDED that before making the appointment of the commissioners and any alternate commissioners, the Court set a procedure to comply with the requirements of Fed. R. Civ. P. 71.1(h)(2)(C).

IT IS FURTHER RECOMMENDED that the court defer the issue of instructions to be issued to the commission to a later date, and that the parties be directed to meet and confer to determine if the parties can stipulate to proposed instructions to the commission.

A copy of this Report and Recommendation shall be served on all parties electronically via the Court's CMECF system. Pursuant to 28 U.S.C. §636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.4, any party shall have fourteen days

after service of a copy of these proposed findings and recommendations to serve and file with the U.S. District Judge assigned to the case, any written objections to the findings of fact, conclusions of law, or recommendations of the magistrate judge. A party's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

Dated at Wichita, Kansas this 13th day of July, 2011.

s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE
