# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. 10-1232-WEB-DWB |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas and as further described herein; | ) ) ) ) ) ) |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman County, Kansas, and as further described herein, et al. | ) ) ) ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

On November 8, 2011, Defendant L.D. Drilling, Inc. filed its Notice of Intent to Recomplete the Brown A1 Well. (Doc. 400.) The next day, Northern Natural Gas Company filed its Motion and Memorandum for Temporary Restraining Order Against L.D. Drilling, Inc. and Nash Oil & Gas, Inc. (Doc. 403), seeking a TRO preventing L.D. Drilling and Nash from re-entering and recompleting certain designated wells pending a decision on the merits of

Northern's Access Motion. L.D. Drilling filed a response on November 15, 2011. (Doc. 411.)

The assigned District Judge referred the motion for hearing by the undersigned magistrate judge with the hearing set for November 14, 2011. (Doc. 405.) Due to scheduling conflicts with counsel, the hearing was re-set for November 15, 2011 by telephone conference call. (Doc. 406.)

The following counsel appeared at the November 15, 2011 telephone hearing: Mark Coldiron, Corey Neller, Richard Olmstead and Jim Talcott, Assistant General Counsel, for Northern; Jim Goering and Tim Mustaine for L.D. Drilling; Adams Davis for Nash Oil & Gas; and Jack Black for various defendant-landowners.

Northern relied upon its motion and memorandum including attached Exhibits 1, 2 and 3, and presented no further evidence. Northern's expert witness, Thomas Cook, stated in his affidavit that "[i]n all likelihood, however, if the entire porous section of the Mississippi formation is re-completed, the wellbores will no longer be suitable for use as observation wells." (Doc. 403-3, at 4 ¶ 14.) He further opined that perforating large sections of casing can warp the pipe so it is no longer cylindrical, can result in rough edges around the resultant holes which make it difficult for gauge tools to pass through the area without becoming stuck

or damaging the packer, and can destroy the cement behind the pipe in the perforated interval. (*Id*. at ¶¶ 15-16.)

L.D. Drilling presented the testimony of L.D. Davis and Kim Shoemaker and also incorporated its filings from the earlier motion involving the Zink 1A well, *see* Doc. 342, and testimony at the October 5-6, 2011 hearing. L.D. Davis stated that the recompletion of the Brown 1A well would involve perforating approximately 20 feet of the Mississippi formation using 2 shots per foot and subsequent fracture treatment of the formation using 200,000 pounds of sand. Davis stated that he had been involved with fracture treatments using 50,000 pounds of sand, but had never used 200,000 pounds in prior workovers. He also restated his testimony during the October 5-6, 2011 hearing that this number of perforations probably warps the casing some. The fracture treatment could also erode the cement around the casing, but Davis indicated that this could be re-cemented later. Davis believed that nothing he was proposing to do would prevent use of the Brown 1A well by Northern as an observation well in the lower Viola formation if Northern is successful in completing the present condemnation of that wellbore.

Shoemaker testified that the Mississippi formation is blanketed across the entire Expansion Area with some variance in quality, but of similar thickness. He

was aware that operators within several miles of the Brown 1A well, specifically Raymond Oil, had been using 200,000 pounds of sand in fracture treatments of the Mississippi formation.

Nash Oil & Gas presented no evidence. Nash's counsel stated at the hearing that Nash did not have the funds to immediately re-enter any of its wells and had no plans to do so at this time.

## DISCUSSION

In order to obtain a temporary restraining order, a party must meet the same requirements that are imposed concerning entry of a preliminary injunction. The moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. Northern Natural Gas Co. v. L.D. Drilling, Inc., et. al., 759 F. Supp. 2d 1282, 1297-98 (D. Kan. 2010).

The recompletion work proposed by L.D. Drilling is all the direct result of Northern's request for immediate access to the wells so they can be converted to observation wells. As Mr. Shoemaker stated, these wells were selected because they might be lost to L.D. Drilling if Northern is allowed to condemn the wells,

and this would be the same to L.D. Drilling as if they were being plugged. Also, L.D. Drilling seeks to test the Mississippi formation in these wells in order to rebut Northern's contention in these condemnation proceedings that the wells have only salvage value. While the Court allowed re-entry and recompletion in the Zink 1A well to test the Swope portion of the Lansing-Kansas City formation, that project differed from the one now proposed for the Brown 1A well in that now L.D. Drilling proposes not only to perforate the formation, but also to subject it to a very substantial fracture treatment.

After consideration of the pleadings and testimony, the Court finds that there is significant likelihood of irreparable harm to the wellbore of the Brown 1A well if the re-entry and recompletion is allowed, and there is a substantial likelihood that the recompletion could prevent the well from being capable of being used as an observation well as provided in Northern's containment plan approved by the FERC. The size of the proposed fracture treatment is four times greater than any fracture treatment overseen by L.D. Davis in his years in the oil and gas business in Kansas. Furthermore, while fracture treatments of this size may be used by other operators in nearby wells exploring the Mississippi formation, there is no indication that this size of fracture is safe where the wellbore needs to be maintained and preserved in such a manner that would allow

its use in lower formations such as the Viola.  This favors entry of a temporary restraining order.

As to the likelihood of success on the merits, this motion for a temporary restraining order may be directly affected by the Court's decision on Northern's pending motion to confirm its authority to condemn the subject wells and other property, and for immediate access to the wells and other property (the Access Motion).  *See* Doc. 202, 203.  A hearing on that motion was held on October 5 and 6, 2011, and post-hearing submissions were filed on October 12 and October 19, 2011.  (Doc's 362, 387.)  The undersigned magistrate judge anticipates the filing of his report and recommendation in connection with the Access Motion within the next week, and the recommendations set out in that report may affect the respective rights of the parties concerning the subject wells.  Northern has made a strong case to support its right to condemn the subject wells and thus the possibility of success on the merits also favors entry of the temporary restraining order.

Northern's motion for a temporary restraining order only seeks to restrain re-entry and recompletion pending a ruling on the merits of the Access Motion, and the Court finds that any alleged harm to L.D. Drilling from such a short delay is minimal.  L.D. Drilling has stated that it does not intend to do anything in

connection with its proposed re-completion of the Brown 1A well until at least November 28, 2011. Furthermore, to date L.D. Drilling has not incurred any substantial costs related to that proposed project other than having three tanks delivered to the premises and filled with water. This factor also favors entry of the temporary restraining order.

Finally, because the requested temporary restraining order seeks to preserve the status quo concerning the viability of the Brown 1A well for conversion to an observation well pursuant to the FERC-approved containment plan, the requested order clearly is in the public interest.

For the above reasons, the undersigned magistrate judge recommends that the Court enter a temporary restraining order pursuant to Fed. R. Civ. P. 65 restraining L.D. Drilling, Inc. from any re-entry or recompletion of the Brown 1A well pending a final decision by the assigned District Judge on the upcoming report and recommendation of the undersigned magistrate judge on the merits of Northern's Access Motion and any objections to that report and recommendation.

The Court also recommends that the motion for a temporary restraining order concerning the Geesling 1 well be denied as premature. L.D. Drilling has stated no present intent to re-enter or re-complete that well until after it has analyzed the results of any re-completion of the Brown 1A well. *See* Transcript

(Oct. 5-6 hearing), at 370. The same is true as to the requested temporary restraining order against re-entry or recompletion by Nash Oil & Gas of its three wells since Nash has no present intent to re-enter or recomplete any of its wells. Thus the motion as to Nash Oil & Gas is also premature and should be denied.

**IT IS THEREFORE RECOMMENDED** that the Motion for Temporary Restraining Order (Doc. 403) be granted prohibiting any re-entry or recompletion of the Brown 1A well by L.D. Drilling, Inc., and that the temporary restraining order should remain in effect pending a final decision by the assigned District Judge on the upcoming report and recommendation of the undersigned magistrate judge on the merits of Northern's Access Motion and any objections to that report and recommendation.

**IT IS FURTHER RECOMMENDED** that because L.D. Drilling, Inc. has not established that it has or will incur any substantial loss or expenses as a result of entry of the requested temporary restraining order, Northern Natural Gas Company shall post a bond pursuant to Fed. R. Civ. P. 65(c) in the amount of $10,000, without the requirement for any sureties, as security for any costs or damages incurred by L.D. Drilling, Inc. should it be determined that it has been wrongfully restrained.

**IT IS FURTHER RECOMMENDED** that the Motion for Temporary

Restraining Order (Doc. 403) be denied as premature as to any re-entry or recompletion of the Geesling 1 Well by L.D. Drilling, Inc. and as to the Holland 2-26, J.C. 1 and Trinkle 1 wells by Nash Oil & Gas, Inc.

A copy of this Report and Recommendation shall be served on all parties electronically via the Court's CMECF system.  Pursuant to 28 U.S.C. §636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.4, any party shall have fourteen days after service of a copy of these proposed findings and recommendations to serve and file with the U.S. District Judge assigned to the case, any written objections to the findings of fact, conclusions of law, or recommendations of the magistrate judge.  A party's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

Dated at Wichita, Kansas this 16th day of November, 2011.

        s/ Donald W. Bostwick
        DONALD W. BOSTWICK
        U.S. MAGISTRATE JUDGE