IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-1232-MLB-DWB |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas and as further described herein; | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

Defendants, the Huff Landowner Group, have filed a Motion to Compel Discovery Responses and supporting Memorandum. (Doc's 409, 410.) Plaintiff, Northern Natural Gas Company, has filed its Response (Doc. 424), and the Huff Group has filed a Reply. (Doc. 439.) After reviewing the motion and briefs, the Court is prepared to rule. For the reasons set forth below, the motion is granted in part and denied in part as set out below.

**FACTS**

The Huff Group seeks to compel Northern to respond to several interrogatories and requests for production of documents generally related to

documents and information concerning the income Northern receives from its existing operations at the Cunningham Field or expects to receive from its operations in the Expansion Area. Northern objected to these discovery requests on the grounds that they were not calculated to lead to the discovery of admissible evidence because the value of the property in this condemnation proceeding cannot be enhanced by any gain to the taker, and its special value to the condemnor, as distinguished from others, must be excluded as an element of market value, citing U.S. v. Miller, 317 U.S. 369, 375 (1943). *See* Doc. 410, at 2 (quoting Northern's objections).

     Huff argues that one method of valuing property is the income capitalization method which is recognized by the condemnation statute, K.S.A. 26-513(e), and which Northern's expert witness, Mr. Shaner, has stated has some application. *See* Doc. 410-2. In order to apply an income capitalization approach, Huff states that it needs the requested financial information from Northern so that its expert witness can calculate the rental value of the property being taken in this condemnation since it claims that such property and the Cunningham Storage property operated by Northern are comparable properties. Huff acknowledges that there is a distinction between profits that Northern may earn from the properties and rental value and further acknowledges that financial information on rental value may not exist in

separate form. However, Huff argues that an expert witness may take the profits earned by Northern and reduce it to rent to be capitalized by eliminating certain elements that may not directly relate to rental value. *See e.g.,* <u>Bonner Springs v. Coleman</u>, 206 Kan. 689, 694-96 (1971) (discussing mixed records reflecting both rental income and other profits.)

Citing <u>Northwest Pipeline Corp. v. 95.02 Acres of Land</u>, 2003 WL 25768634, at *3 (D. Idaho, Dec. 19, 2003), Northern argues that Huff is improperly attempting to calculate damages which do not measure Huff's loss, but rather impermissibly seeks to calculate the value of the Expansion Area to Northern as the condemnor. (Doc. 424, at 8.) In addition to its reliance on <u>Northwest Pipeline Corp</u>. and <u>U.S. v. Miller</u> to exclude any special value to Northern as the condemnor, Northern also argues that Huff has (1) failed to show that its property was generating any storage income prior to the condemnation, (2) has failed to show that their properties are physically capable of use as natural gas storage and (3) has failed to show that there was a market for such storage on their properties (the Expansion Area) separate from Northern's operations. (Doc. 424, at 12.) Finally, in less than a page of argument, Northern argues that the Court should limit discovery pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), because the burden or expense of the discovery outweighs its likely benefit. (Doc. 424, at 15.)

## DISCUSSION

As Huff correctly notes, the motion now before the court presents a discovery issue, not an evidentiary issue of whether the alleged method of calculation of value argued by Huff is ultimately admissible into evidence. Discovery relevance is "minimal relevance," meaning that it is possible that the requested information may reasonably lead to the discovery of admissible evidence. *See* Teichgraeber v. Memorial Union Corp. of Emporia State University, 932 F.Supp. 1263, 1265 (D. Kan. 1996).

The Court agrees that the income capitalization method of valuation may be a proper consideration in determining value in a condemnation case. Whether or not the Huff Group can meet all the requirements for application of this method, however, remains to be seen based upon expert testimony after completion of discovery. However, at this stage of the proceedings, Huff is entitled to discovery of some financial information which its expert can use in calculating rental value of the premises. The fact that this financial information may include the profits Northern has made from the Cunningham Field does not prevent its discovery for use by Huff's expert witness.

Likewise, the question of whether the project enhancement doctrine[1] is applicable in this case so that Huff is precluded from offering certain evidence of value is not now before the court. That again is a question of admissibility rather than discoverability.

The parties spend considerable time arguing about application of the project enhancement doctrine and whether it is relevant in this case. *Cf.* (Doc. 424, at 7) *with* (Doc. 439, at 4.) Huff first argues that it is not seeking to establish a special value of the subject property (the Expansion Area) to Northern, but instead is seeking to determine, through the income capitalization method, what a willing buyer has paid and will pay a willing seller for gas storage. (Doc. 410, at 7.) Citing U.S. v. Miller, Huff also argues that the project enhancement rule does not preclude consideration of nearby properties owned by Northern (the Cunningham Field), which Northern previously acquired some time ago in a separate condemnation proceeding. (Doc. 439, at 5-6.)

In U.S. v. Miller, the question before the Court was "[s]hould the owner have the benefit of any increment of value added to the property taken by the action of

---

[1] See Northwest Pipeline Corp. v. 95.02 Acres of Land, 2003 WL 25768634, at *3 (D. Idaho, Dec. 19, 2003) ("[V]alue peculiar to the condemnor is not relevant to the just compensation calculation. The policy against enhancing value based upon the condemnor's need is often referred to as the 'project enhancement rule.'")

5

the public authority in previously condemning adjacent lands?" 317 U.S. at 375.

The Court set out the applicable considerations:

> If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvements erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

317 U.S. at 376-77. In Miller, the Court concluded that from the date the specific project was authorized in August 1937, it was likely that these additional lands would be taken in order to complete the project in its entirety, therefore these landowners were not entitled to any increase in value of their land after August 1937. 317 U.S. at 377.

In applying the rule in U.S. v. Miller, courts look to the "scope of the project" to determine whether the condemnor must pay an enhanced value. *See e.g.*, United States v. 49.01 Acres of Land, 669 F.2d 1364, 1367 (10th Cir. 1982) (If a landowner's property increases in value because of the government project, the

government need not pay this enhanced value unless (1) the property was not within the original scope of the project; or (2) the government failed to provide the public with adequate notice of the project's scope; or (3) the landowner reasonably believed that subsequent government action removed the property from the project's scope"). Other courts consider it as an exception to the project enhancement rule where a condemnor does not manifest intent to condemn a strip of land, but condemns nearby properties and improves them. Enbridge Pipeline (East Texas) L.P. v. Avinger Timber L.L.C., 326 S.W.3d 390, 401 (Tx. Ct. App, 2010). In that instance, when the condemnor later decides to condemn another strip of land, its value may have potentially increased due to the improvements made by the condemnor on the nearby property. Because at the time of the later taking, the price paid by a willing buyer would take into account the nearby improvements, a landowner would have to be compensated by the condemnor for the increased value of the property. *Id.*

In this case, the Huff landowners argue that any increase in value of their land due to the existence of the nearby Cunningham Field can be considered in determining market value since the lands now located in the Expansion Area were never considered as part of the earlier condemnation of the Cunningham Field itself. (Doc. 439, at 5-6.) However, in order to consider any such increased value, Huff

must be able to show that any increased value is not exclusive to Northern as condemnor, but would also be considered by other parties in considering the market value of the property.  *See* Enbridge Pipeline, 326 S.W.3d at 407-08 ("The value of this real estate as a gas processing plant site is not exclusive to Pipeline [the condemnor].  Therefore Bolton's [expert] assessment was of the fair market value, not the value to the taker.").  *See also*, Northwest Pipeline Corp. v. 95.02 Acres of Land, 2003 WL 25768634, at *2 ("If the land is especially adapted for the proposed purpose and consequently creates a '*special demand* by ordinary purchasers in the ordinary market,' then the owner is entitled to claim additional value based upon the proposed purpose."  However, in that situation, the owner "must demonstrate that there are others interested in buying the land and using it for the same purpose.")  Stated another way, if the increased value of Huff's property in the Expansion Area is created solely by Northern's need for and intended use of the Expansion Area, then the enhanced value would be considered as "a hold-up value" not a fair market value.  *See* United States v. Cors, 337 U.S. 325, 333-34 (1949).

    At this stage of discovery, the court is not in a position to determine whether the project enhancement rule is applicable or not and, as previously noted, that issue is one of admissibility rather than discoverability.  While the court has serious concerns about whether the Expansion Area can be shown to have special value to

parties other than Northern for use as gas storage, the court cannot say with any degree of certainty that at least some of the requested information is not calculated to lead to the discovery of admissible evidence in this case.

Before considering the specific information being requested, the court must also consider Northern's argument that production of the requested information should be denied under Fed. R. Civ. P. 26(b)(2)(C)(iii) because its likely benefit is outweighed by the burden or expense of production. This argument is based on Northern's objections that each of the disputed discovery requests are "overly broad and unduly burdensome." *See* Doc. 410-1, at 7. The sum and substance of Northern's argument of burdensomeness in its opposing brief are the brief, general statements that these requests cover "more than 30 years of all operations" and represent an "extraordinary volume of information." (Doc. 424, at 15.) The Huff landowners respond that Northern has waived any objections based upon undue burden because it has not provided the required detail (by affidavit or other method of proof) as to how each specific request is burdensome, citing Lowery v. County of Riley, et.al., Case No. 04-3101-JTM-DWB, 2009 WL 648928, at *4 (D.Kan., Mar. 12, 2009) .

In Lowery, this court overruled conclusory objections of burdensomeness where the objecting party had not demonstrated why each request was burdensome

9

by means of affidavits or evidence which demonstrated the nature of the claimed burden. Here, Northern has taken the same tact of using a general, conclusory objections without specifically identifying how or why each request is so burdensome. This would justify a finding that any objection based on burdensomeness had been waived. However, under the circumstances of this case, and because the court has previously advised the parties in earlier conferences that it would freely apply the test set out in Fed. R. Civ. P. 26(b)(2)(C)(iii) when ruling on discovery disputes, the court will consider each disputed request to determine whether the scope of that specific request should be limited because its likely benefit is outweighed by the burden or expense of production.

## SPECIFIC REQUESTS AND INTERROGATORIES

The motion to compel is addressed to Document Requests No's 2, 4, 6 and 10, and to Interrogatories No's 4, 5, 6, 7, 8 and 9. (Doc. 410, at 1.) After considering the relevance of each request and interrogatory as well as the balancing test in Fed. R. Civ. P. 26(b)(2)(C)(iii), the court finds as follows:

Document Request No. 2:  Northern shall produce all documents that refer to any revenue, income or other consideration that Northern has derived from or which is related to its operations in the Expansion Area during the period from January 1, 2007 through the current date. For purposes of this document request, the term

Expansion Area includes the tracts which are the subject of the present condemnation action as well as all other property which Northern has acquired (by lease, outright sale or any other means of conveyance) during the above stated period of time (January 1, 2007 through the current date) for the purpose of conducting operations at the Cunningham Field.  Information for periods prior to January 1, 2007 are so remote that the cost and expense of production would outweigh any benefit that information might have concerning the present fair market value of the property involved in this condemnation.

<u>Document Request No. 4:</u>   Northern will not be required to produce documents requested in this document request which involve projections as to future revenues or income.

<u>Document Request No. 6:</u>   Northern will not be required to produce documents requested in this document request concerning service agreements with specific identified customers.

<u>Document Request No. 10:</u>   Northern will be required to produce its financial statements for the period from January 1, 2007 through June 30, 2011, as used for financial reporting purposes by Mid America prior to the creation of consolidated financial statements filed with the SEC.  If these financial statements are prepared on a fiscal year basis rather than a calendar year basis, Northern shall

produce any financial statements that include the period from January 1, 2007 through June 30, 2011.

<u>Interrogatory No. 4</u>: Northern will be required to describe all services which it provided to any customers at the Cunningham Field from January 1, 2007 through the current date. Northern will not be required to describe any services which it considered providing, but did not actually provide to customers during this period.

<u>Interrogatory No. 5</u>: Northern will not be required to answer this interrogatory. Identification of the names of persons to whom Northern has provided services is not calculated to lead to discovery of any additional relevant evidence beyond the information that will be disclosed by Northern's production of the other financial information being required by this Memorandum and Order.

<u>Interrogatory No. 6</u>: Northern will be required to state the amount of fees it has charged for any services provided to its customers at the Cunningham Field from January 1, 2007 through the current date as described in the Answer to Interrogatory No. 4 above; however, Northern will not be required to break down the fees charged to any specific named customers. As contemplated by the Huff Group in its Reply Brief, answers to Interrogatories 4 and 6, as limited by this Memorandum and Order, would simply require that Northern "list the services it provides at the Cunningham Storage Field and provide a fee schedule for those

services . . ." (Doc. 439, at 8.) There is no indication, however, that information directed to any specific customer is calculated to lead to the discovery of additional relevant evidence beyond the general fee information being required by this Memorandum and Order.

<u>Interrogatory No. 7</u>:   Northern will not be required to answer this interrogatory.

<u>Interrogatory No. 8</u>:   Northern will be required to identify the Persons who have discoverable information regarding the manner and method of calculating the fees for services provided at the Cunningham Field for the period from January 1, 2007 through the current date, stating generally the subjects of each person's discoverable information.

<u>Interrogatory No. 9</u>:   Northern will be required to describe all services which it provides or has provided to its customers at the Cunningham Field which have in any way utilized the Expansion Area.  Northern will not be required to describe any such services which it may have "considered providing" but has not actually provided, as that information is not calculated to lead to the discovery of relevant evidence.

IT IS THEREFORE ORDERED that the Motion to Compel by the Huff Group (Doc. 409) is hereby GRANTED IN PART and DENIED IN PART as set forth above in this Memorandum and Order;

IT IS FURTHER ORDERED that Northern shall produce the documents and answer the interrogatories required by this Memorandum and Order not later than **March 19, 2012.**

Dated at Wichita, Kansas this 24th day of February, 2012.

s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE