# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-1232-MLB-DWB |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas and as further described herein; | ) ) ) ) ) | |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman County, Kansas, and as further described herein, et al. | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

Defendant, L.D. Drilling, Inc., has filed a Motion to Compel Northern to Produce Documents from Prior Administrative and Court Proceedings concerning the Cunningham Storage Field. (Doc. 419.) Plaintiff, Northern Natural Gas Company, has filed its Response (Doc. 429), and L.D. Drilling has filed a Reply. (Doc. 440.) After reviewing the motion and briefs, the Court is prepared to rule. For the reasons set forth below, the motion is granted in part and denied in part as

described in this Memorandum and Order.

## FACTUAL BACKGROUND

At dispute are ten requests for production of documents by L.D. Drilling which seek materials concerning the Cunningham Storage Field from the time it was first converted to a natural gas storage field to the present date, including documents from both administrative proceedings before the Federal Energy Regulatory Commission and the Kansas Corporation Commission, as well as documents from prior federal court cases involving Northern and various producers and/or landowners.  L.D. Drilling identifies eight factual issues it claims are critical in this condemnation case, and argues that the requested materials are calculated to lead to the discovery of admissible evidence concerning those factual issues:

1.    the amount of storage gas, if any, that has migrated out of the Cunningham storage reservoir;

2.    the causes and mechanisms of any such migration from the Cunningham storage reservoir;

3.    the timing of any such migration;

4.    the extent to which gas produced from or lying within the Extension Area is migrated storage gas, as opposed to native gas;

5.    the capacity of gas-holding formations within and beyond the

Extension Area;

6.    the amount of gas produced from the extension area;

7.    the extent to which Northern and the producers knew of any migration
      and its causes; and

8.    the credibility of the present expert opinions on which Northern is now
      relying, evaluated in light of those same experts' opinions in earlier
      proceedings, and in light of the still-earlier opinions of Northern's
      previous experts.

(Doc. 419, at 2.)

Northern first notes that it "has produced, and will continue to produce, all data regarding migration of gas from the Cunningham Storage Field to the Authorized Extension Area, including the data developed by Northern with Netherland Sewell ('NSAI')."  (Doc. 429, at 3 n. 3.)  Furthermore, Northern notes that it has not objected to the part of Request No. 1 that seeks materials related to FERC Docket No's CP07-107-001 and CP09-465-000, which are the FERC applications which led to the present condemnation action.  (Doc. 429, at 3 n. 4.) Presumably these documents have already been produced.  Northern does object to production of documents from other FERC dockets.

Northern objects to producing documents described in Request No. 2 that

were supplied to the Kansas Corporation Commission claiming that they were not relevant due to the jurisdictional holding in Colorado Interstate Gas Company v. Thomas E. Wright, et.al., 2010 WL 1488934 (D. Kan. Apr. 13, 2010).  Northern did agree to produce documents from KCC Docket No's 06-CONS-225-CUNB. Similarly, as to Request No. 7, Northern raised the same jurisdictional objection, but did agree to produce responsive documents in their possession, custody or control. The Court assumes that these documents concerning both Requests No's 2 and 7 have been produced. *See* Doc. 429, at 3-4 n's 5 & 9.

As to Request No. 3 concerning expert reports prepared for use in several federal court cases by experts who testified on behalf of Northern or other parties in those cases, Northern has objected based on relevance as to all cases except for the case of Northern Natural Gas Co. v. L.D. Drilling, Inc., Case No. 08-1405.  (Doc. 429, at 4 n. 6.)  Presumably Northern has therefore already produced any such reports in that case.[1]  Northern also notes that present counsel for L.D. Drilling were

---

[1] Case No. 08-1405-MLB-DWB involves common law claims (conversion, nuisance, unjust enrichment, civil conspiracy, etc.) by Northern that the defendants have produced storage gas that migrated from the Cunningham Storage Field.  Discovery in that case has been stayed by the Court in order for the parties to focus on discovery in this condemnation case.  (Case No. 08-1405, Doc. 474.)  Issues concerning ownership of storage gas that has migrated are presently before the Kansas Supreme Court in the pending appeal in Case No. 10-104279-AS.

4

counsel in the <u>Trans Pacific</u> case;[2] Nash was a party in the <u>Trans Pacific</u> case and its

prior counsel represents Val Energy in this case; and Mr. Black, counsel for some of

the landowners in this case was counsel for some of the plaintiffs in the <u>Beck</u> case.[3]

*Id.*  The Court also notes that counsel for Val Energy in the present case was also

counsel in the <u>Nash</u> case.[4]  The fact that defendants' current counsel were involved

in these prior lawsuits, albeit sometimes on behalf of clients other than the present

defendants, does not mean that Northern should be relieved of any obligation to

produce documents concerning those prior suits.  Clearly Northern has retained

documents concerning those prior lawsuits since it has attached at least some of the

transcripts of trial in those cases to pleadings in this case.  *See* e.g., Doc. 429-1.

Northern objected to Request No. 15 based upon burdensomeness.  That

request seeks all communications between Northern and the FERC with respect to

the migration of storage gas from the Cunningham Storage Field, and any related

application made to the FERC, including communications with respect to Northern's

use of eminent domain power to acquire the interests of defendants in this

proceeding.  The objection was based on the fact that there was no temporal or

---

[2] <u>Northern Natural Gas Co. v. Trans Pacific Oil Corp.</u>, Case No. 02-1418.

[3] <u>Beck v. Northern Natural Gas Co.</u>, Case No. 96-1150.

[4] <u>Northern Natural Gas Co. v. Nash Oil & Gas, Inc.</u> Case No. 04-1295.

geographic limitation stated in the request which would require Northern to review "endless amounts [of] information" since  Northern has regular contact with its governing agencies on a variety of matters.

Objections to the other requests were generally based upon relevance.  (Doc. 429, at 4-5 no's 10, 11 & 12.)

Finally, Northern makes a general objection that the requests are overly broad and unduly burdensome on their face which would require Northern to spend unnecessary time and effort to ponder, speculate and decide to rummage through documents going back thirty years, including reports, letters, briefs, emails, testimony, affidavits, declarations, exhibits, data submissions, etc., to determine what is and what is not responsive.  (Doc. 429, at 18-20.)   Northern also notes that it has expended additional time and considerable expense to convert documents produced in this case to searchable .pdf files for electronic production to all parties and that this was done at the request of L.D. Drilling's counsel.  (Doc. 429, at 19.)

In its Reply, L.D. Drilling disputes Northern's claim of burdensomeness noting that it attempted to narrow its requests by eliminating inconsequential FERC proceedings from its request.  (Doc. 440, at 3.)[5]

---

[5]   In its initial brief, LD. Drilling stated that if "there be any such proceedings genuinely irrelevant to any of the technical issues raised or potentially raised in the present action (e.g., proceedings seeking administrative approval for painting of pipelines

DISCUSSION

As has been true throughout this case, the parties come at this discovery

dispute from two opposite viewpoints: L.D. Drilling views Northern's refusal to

produce all prior information concerning the storage field as an attempt to conceal

or hide their alleged prior misrepresentations to the FERC concerning the migration

of gas (Doc. 440, at 3); Northern views L.D. Drilling's requests for prior

information as being a "stuck-in-the-past view of the world."  (Doc. 429, at 19.)

The Court is unwillingly to fully accept either party's characterization.

The issue in this condemnation case is the determination of the just

compensation to be paid to defendants as a result of the condemnation of their

respective property interests.  One such interest involves just compensation for gas

in place under the Expansion Area.  The legal issue of whether Defendants have title

to only native gas in place or title to gas that may have migrated to the Expansion

Area from the Cunningham Storage Field, is an issue to be decided in the pending

appeal before the Kansas Supreme Court.  This Court has also determined that

Northern retains title to any gas that migrated to the Expansion Area after June 2,

2010, when the FERC issued its Order concerning the Expansion Area.  <u>Northern</u>

---

or planting of grass seed), then L.D. Drilling withdraws any request for documents
generated in connection with such proceedings, to minimize overbreadth in its request."
(Doc. 419, at 16.)

Natural Gas Co. v. 9117.53 Acres, 781 F. Supp.2d 1155, 1160 (D. Kan. 2011)[6];

Northern Natural Gas Co. v. 9117.53 Acres, 2011 WL 2118642 at * 4 (D. Kan.

May 27, 2011).[7]  An important element regarding the gas in place involves the

volume of gas (and general size of the reservoir capable of holding gas) which is

located beneath the Expansion Area. This is a matter for determination based on

expert testimony.

In a hearing on October 5 & 6, 2011, in connection with its request for

immediate possession of the property and in order to determine the amount of any

bond to be posted, Northern presented expert testimony from Randall Brush

concerning his opinion as to the volume of gas which had migrated into the

Expansion Area by 1985.  Brush has been working on issues concerning the

Cunningham Storage Field since 2006.  (Doc. 432, at 22.)  His calculations indicate

that 1.045 Bcf of storage gas had migrated to the Expansion Area.[8]  (Doc. 432, at

64-69.)  He also concluded that there is no economically producible native gas

---

[6]  Doc. 183, at 8.

[7]  Doc. 187, at 8.

[8]  Mr. Brush's calculations were based upon a porous thickness of the Viola
formation of 75 feet.  (Doc. 432, at 67.)  The Court cannot determine whether Mr. Brush
made any calculations concerning the Simpson formation even though both formations
are part of the Cunningham Storage Field and there is admitted communication between
the formations.

beneath the Expansion Area.  (Doc. 432, at 65.)  While Mr. Brush testified that he had not reviewed or relied upon the opinions and findings of Northern's earlier experts, Netherland Sewell, it is clear that he had available any and all historical information in Northern's possession concerning the Cunningham Storage Field, including information gathered by Netherland Sewell, in order to complete his study and issue his opinion.  (Doc. 432, at 22-24.)

Likewise, any reservoir engineer retained by Defendants to study the reservoir underlying the Expansion Area would need access to this historical information concerning operation of the Cunningham Storage Field and any studies concerning migration of gas from the storage field to the Expansion Area.  This would presumably include information in Northern's possession concerning the amount of storage gas, if any, that has migrated out of the Cunningham storage reservoir; the causes and mechanisms of any such migration from the Cunningham storage reservoir; the timing of any such migration; the extent to which gas produced from or lying within the Extension Area is migrated storage gas, as opposed to native gas; and the capacity of gas-holding formations within and beyond the Extension Area and the amount of gas produced from the extension area. These are the first six factual issues identified by L.D. Drilling to support their request for the historical data and records from Northern.  See Doc. 419, at 2.

9

Generally speaking, discovery of documents related to this type of historical information would appear to be calculated to lead to the discovery of admissible evidence that relates to the issue of just compensation in this case and is therefore relevant for discovery purposes.  Discovery relevance is "minimal relevance," meaning that it is possible that the requested information may reasonably lead to the discovery of admissible evidence.  *See* Teichgraeber v. Memorial Union Corp. of Emporia State University, 932 F.Supp. 1263, 1265 (D. Kan. 1996).

L.D. Drilling lists two additional bases for seeking the requested discovery. First, L.D. Drilling indicates that the information sought relates to the extent to which Northern and the producers knew of any migration and its causes.  (Doc. 419, at 2.)  This issue, however, appears to be related to the common law claims brought by Northern in Case No. 08-1405 rather than issues of just compensation in the present condemnation case.  This is supported by L.D. Drilling's claims that it wants to present such information "to the Commission that will try this case *and to the jury in Case No. 08-1405*."  (Doc. 440, at 3) (emphasis added).

Second, L. D. Drilling argues that the request information could be used to impeach credibility of either Northern's employees or Northern's expert witnesses. Both sides spend a considerable amount of time and paper discussing whether or not statements made by an expert witness called by Northern in either administrative

proceedings or prior federal court litigation could be admissible as admissions of Northern under Fed. R. Evid. 801(d)(2).[9]  However, where as here, the requested information is found to be discoverable on other grounds, any extended review of this rule of evidence adds nothing to resolution of the present discovery dispute. Ultimate questions as to the admissibility of statements pursuant to Rule 801(d)(2) are best left for determination at the time of trial.[10]

The practical problem over which the Court has spent considerable time and thought involves precisely what historical information should be produced now in this condemnation proceeding as opposed to possible production later in the related case (No. 08-1405) involving common law claims by Northern.  As noted above, it seems that any information sought concerning the extent to which Northern and the producers knew of the causes of any gas migration is relevant only to the common

---

[9]  The Advisory Committee Notes to the 2011 Amendments of Rule 801(d)(2) emphasize that statements falling under the hearsay exclusion provided by the rule are no longer referred to as "admissions."

[10]  Rule 801(d)(2), as amended effective December 1, 2011, sets out various instances where statements offered against an opposing party will not be considered to be hearsay.  Northern cites Koch v. Koch Industries, Inc., 37 F. Supp.2d 1231, 1245 (D. Kan. 1998), rev'd on other grounds, 203 F.3d. 1202 (10th Cir. 2000), which interprets subparagraph C of Rule 801(d)(2) and concludes that since an expert witness is not subject to the control of the party opponent, the expert witness cannot be deemed an agent for purposes of this subparagraph.  L.D. Drilling claims that the present case is factually distinguishable from the holding in Koch, and also urges that other subparagraphs (A, B and D) of Rule 801(d)(2) may be applicable.  As noted, these evidentiary arguments are left for determination at trial.

law claims in Case No. 08-1405, and not to a determination of just compensation in this condemnation case.  As a practical matter, however, information on what Northern may have known about the causes of the gas migration is inextricably intertwined with historical information which is relevant to issues in this condemnation case, including FERC filings and prior federal court litigation, that deal with the mechanisms and volumes of gas migration and any gas volumes underlying the Expansion Area.  It seems to the court that it will be impossible to separate these categories of information for purposes of deciding what Northern is to produce.

This presents the court with a problem concerning overlapping discovery between this condemnation case and the common law claims made in Case No. 08-1405.  Initially, the court ordered that discovery in this condemnation case could be used in Case No. 08-1405 since all the parties in Case No. 08-1405 are also parties in this condemnation case.  *See* Scheduling Order, Doc. 306, at 12 ¶ 2p. Subsequently, however, the court stayed discovery in Case No. 08-1405 so that the parties could focus on discovery in this condemnation case.  (Case No. 08-1405, Doc. 474.)  Now, if discovery is allowed concerning what Northern and the producers may have known about the cause of gas migration, this could raise the possibility of duplicative discovery in the future in Case No. 08-1405.  It appears to

12

the court that the only resolution of this possible duplication of effort is to direct that no further document requests seeking production of the same materials may be made to Northern in the future by any parties in the related Case No. 08-1405.

Somewhat related to the issue of possible duplication of discovery is the issue of how Northern is to allow discovery of the information requested by L.D. Drilling which obviously could be very voluminous.  In order to minimize the costs of production of the information requested in these document requests and allowed by this Memorandum and Order, the court will direct that Northern is only obligated to collect the requested materials in one central location and then allow L.D. Drilling and any other defendants to review those materials and mark or otherwise designate what they wish to have copied.  The materials can then be copied by an independent copy company selected by Northern at the expense of the requesting parties. However, there will be no requirement that Northern also convert the documents produced to searchable .pdf files for electronic production. The court notes that this appears to be generally how document discovery was handled in prior litigation with Northern *see* Doc. 419-10, at ¶¶ 3-4, and how document discovery is conducted in many administrative proceedings which utilize the concept of production of documents in a "data room."

Northern completes its objections by claiming that L.D. Drilling's requests

13

are overly broad and unduly burdensome.  *See* Doc. 429, at 18-19.  The court will

subsequently address the overly broad claim as to each numbered document request.

First, however, is the issue of burdensomeness.

The underlying basis of Northern's burdensomeness claim is the fact that the

requests on their face are so extensive as to be burdensome since they involve thirty

years of documents many of which allegedly will have nothing to do with

determination of just  compensation and the value of the interests being condemned.

This allegation, however, flies in the face of the way Northern has accommodated

its own expert witness over the past five years in providing him with voluminous

information so that he could undertake a "grass roots evaluation of the Cunningham

Field and the issues associated with migration from the Cunningham Field; and that

included evaluating the history of the Cunningham Field itself and of wells in the

adjoining area."  (Doc. 432, at 22.)  Simply stated, Northern cannot have it both

ways.  They cannot provide extensive historical data to their own expert while

refusing to produce similar information for use by defendants.[11]

---

[11]  As was the case concerning the motion to compel filed by the Huff Landowner
Group, Northern has not shown how each request is unduly burdensome by submission of
affidavits or other types of evidence.  It is not enough to claim that the requests "by their
very nature" or "on their face" are unduly burdensome.  See e.g., <u>Lowery v. County of
Riley, et.al.</u>, Case No. 04-3101-JTM-DWB, 2009 WL 648928, at *4  (D.Kan., Mar. 12,
2009) .

This brings us to a consideration of each specific request to determine whether any request is overly broad.  After considering each specific request, the court makes the following findings:

Request No. 1:      Northern will be required to produce the requested materials concerning all of the listed FERC dockets; provided however, that L.D. Drilling has agreed to exclude any such dockets to the extent that they do not involve "technical issues raised or potentially raised in the present action.  (See Doc. 419, at 16.)[12]

Request No. 2:      Northern will be required to produce the requested materials concerning all of the listed KCC proceedings.

Request No. 3:      Northern will be required to produce all requested expert reports in all the listed cases for experts who testified whether live or by affidavit or declaration.

Request No. 4:      Northern will be required to produce all documents described in this request.

Request No. 5:      Northern will be required to produce any documents

---

[12]  The court notes that Northern has not disputed the statements attributed to its prior counsel about the fact that Northern kept its litigation and administrative files concerning the Cunningham Field precisely because it anticipated that they might be needed in future judicial or administrative proceedings.  *See* Doc. 419, at 16; Doc. 419-10.

which contain facts and data provided by Northern or its attorneys to any expert

witness and which the expert considered or relied on in forming the opinions in any

of the cases or administrative proceedings identified in the request.[13]

Request No. 7:      Northern will be required to produce any documents

described in this request.

Request No. 8:      Northern will not be required to produce the documents

identified in this request.  The request is unduly broad since it seeks not only the

trial exhibit itself, but all underlying documents which might have involved the

creation of the exhibit.  If there were questions concerning those matters, they

should have been asked at trial and should be reflected in the transcript.  The court

will not require Northern to attempt to reconstruct events that occurred in a case

filed in 2002.

Request No. 9:      Northern will be required to produce any detailed map

which is prepared pursuant to Judge Marten's order referenced in this request;

provided however, that Northern will not be required to produce any other

---

[13]  This does not include any expert witness retained or specially employed in anticipation of litigation or administrative proceedings or to prepare for such proceedings, but who was not expected to be called as a witness at trial.  *See* Fed. R. Civ. P. 26(b)(4)(D).  Since the designated proceedings have already taken place, this means that the request applies only to facts and data provided to any expert who actually testified in person or by affidavit or declaration at the trial or administrative proceedings.

documents "which pertain" to such a map.

Request No. 10:    Northern will be required to produce the documents identified in this request.  It appears that such documents were provided to Mr. Brush by Northern in connection with his work and expert testimony.

Request No. 15:    Northern will not be required to produce the broad category of documents outlined in this request.  To the extent that Northern has communicated with the FERC in connection with the dockets identified in Request No. 1, those documents will be produced in response to Request No. 1.  As such, much of this request is duplicative.  The request for information concerning Northern's communication concerning use of eminent domain powers is not calculated to lead to the discovery of admissible evidence in this case.  Finally, the reference to "any other agency or branch of the United States Government" is unduly broad.

Northern's production of the above-described documents shall be made in the manner previously described in this Memorandum and Order.   Northern shall gather the documents in one central location or one "data room" as provided herein and shall make the documents available for inspection during business hours at that location by any party wishing to examine the documents for a period of two weeks. The documents shall be made available for inspection no later than **April 30, 2012.**

17

Because production of the documents described in L.D. Drilling's request may, of necessity, involve intertwined materials related to the common law claims by Northern in Case No. 08-1405, the court directs that the documents produced in response to this request may be used in Case No. 08-1405 and no additional document requests seeking production of the same materials may thereafter be made of Northern in Case No. 08-1405 by any party to that case.  Therefore, any party in Case No. 08-1405 who may wish to examine the documents being produced by Northern pursuant to the requests by L.D. Drilling shall do so within the two-week period provided in this Memorandum and Order.

For the above reasons, the motion to compel by L.D. Drilling (Doc. 419), is GRANTED in PART and DENIED in PART as set out in this Memorandum and Order, and to the extent that the motion is granted, Northern shall produce the documents in the manner set out herein.

IT IS SO ORDERED.

Dated at Wichita, Kansas this 31st day of March, 2012.

s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE