**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

NORTHERN NATURAL GAS COMPANY,    )
                                 )
                  Plaintiff,     )      **Civil ACTION**
                                 )
v.                               )      No.  10-1232
                                 )
Approximately 9117.53 acres in   )
Pratt, Kingman, and Reno Counties, )
Kansas, and as further described )
herein;                          )
                                 )
Tract No. 1062710 containing 80.00 )
acres more or less, located in   )
Kingman County, Kansas, and as   )
further described herein; et al., )
                                 )
                  Defendants.    )
_____  )

## MEMORANDUM AND ORDER

This case comes before the court on a Motion for Reconsideration and Clarification by L.D. Drilling, Inc. and other defendants.[1] (Doc. 473). The motion asks the court to modify or clarify three points from its Memorandum and Order filed March 13, 2012. (Doc. 464). Plaintiff has responded to the motion. (Doc. 481).

**I. GENERAL STANDARDS OF LAW**

Motions to reconsider are governed by Local Rule 7.3(b), which states in pertinent part, "A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." As this court noted in <u>Comeau v. Rupp</u>, 810

---

[1] The movants are well operator L.D. Drilling, Inc. and other working-interest operators represented by the same counsel. Doc. 473, n.1.

F.Supp. 1172 (D. Kan. 1992):

> A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider, and advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed is likewise inappropriate.

Id. at 1174-75.

**II. DISCUSSION**

1. Removal of well fixtures. Defendants first ask the court to clarify that they are entitled to remove and salvage well fixtures from the Brown A1 and Geesling 1 wells, provided doing so does not interfere with Northern's intended use of these wellbores. Northern's response states that the parties have reached a tentative agreement on the issue. (Doc. 481 at 2).[2]  Northern does not object to L.D. Drilling's removal and retention of the equipment provided it is done in a timely fashion. Id. In view of the parties' apparent agreement, the court denies as moot the request to clarify this issue.

2. Excess draw down of cash deposits. Defendants next ask the court to rule that L.D. Drilling is not obligated to return any cash deposits it draws down to fund replacement wells unless, in drilling those wells, L.D. Drilling fails to act as a reasonably prudent operator.  L.D. Drilling argues that the purpose of the $400,000 deposits is to provide it with the means to drill  substitute wells

---

[2]  The agreement has not been provided but the court sees no reason to wait for it in view of counsels' representation.

and to put it in the same position it would have been in had Northern not condemned the current wells. It argues that the just compensation for each wellbore is the cost of drilling a replacement well, such that in no event should it be required to repay any draw down of the $400,000 well deposits.

Northern opposes the request, arguing defendant is asking the court to improperly apply the "substitute facilities doctrine." That doctrine allows just compensation for condemnation of some public facilities to be based on the cost of providing an adequate substitute for the property. See e.g., Whitewater Riv. Watershed Joint Dist. No. 22 v. Butler Rur. Elec. Co-op Ass'n., 6 Kan.App.2d 8, 12, 626 P.2d 228 (1981). The rationale for it is based on the unusual character of property such as a public school, which may have no market value in the usually accepted sense of the term. City of Wichita v. Unif. School Dist. No. 259 (Wichita), Sedgwick Co., 201 Kan. 110, 439 P.2d 162, 165-66 (1968). Northern contends the doctrine is not a valid measure of just compensation for non-public property.

The court's prior Memorandum and Order provided unambiguously: "The deposit can be drawn down by the appropriate defendant(s) in full or in part, but if the ultimate award of just compensation is less than the amount withdrawn, the defendant which drew down such funds will be liable for any excess, plus interest." (Doc. 464 at 22). The court also made clear that the $400,000 deposits represented the security necessary to protect defendants against damages from a wrongful restraint rather than the amount of just compensation to which defendants were entitled for the taking of the wells. (Doc. 464 at 24). As for the taking of their wells, defendants are entitled to

-3-

just compensation – nothing more and nothing less – and the amount of compensation due will be determined by the Commission under instructions from the court. As the court stated previously, these deposits "may be used by the owners for any purpose they see fit," but if defendant draws down funds in excess of the Commission's ultimate award of just compensation, defendant will be liable for the excess plus interest. This type of draw-down arrangement is expressly supported by case law, including <u>East Tennessee Nat. Gas Co. v. Sage</u>, 361 F.3d 808 (4th Cir. 2004). It provides the property owner with immediate compensation for the condemnor's use of its property but also provides a disincentive to draw more than the fair market value of the property. Defendant has shown no clear error or other grounds for reconsideration of this ruling.

3. <u>Landowner consent</u>. Defendants' final request is that the court modify the requirement that before drawing upon a well deposit, defendants must first obtain the consent of any landowners, royalty owners, working interest owners and lienholders who have an interest in the tract upon which the well is located. Defendants characterize this as a "veto power" and argue the landowners "should not be allowed to hold [the] well deposits hostage." Defendants further argue that the interests of the landowners and others are protected by the other deposits and bonds posted by Northern.

The Huff Landowner Group[3] has entered a stipulation with L.D. Drilling, Inc. (<u>See</u> Doc. 480). Under that stipulation, the Huff Group does not object to the removal of the requirement for their consent

---

[3] The group of landowners identified in Doc. 477.

-4-

for L.D. Drilling to draw down the well deposits. At the same time, L.D. Drilling acknowledges that the stipulation does not prejudice any present or future claim by the Huff Group that an oil and gas lease on their lands expired or may expire. <u>Id</u>.

L.D. Drilling's argument is basically a restatement of its original objection to Judge Bostwick's Report and Recommendation. <u>See</u> Doc. 428 at 13-14. That argument failed to persuade the court then and fails to persuade it now that the interests of the landowners and others in these tracts will necessarily be unaffected by any draw down of the well deposit funds. The rights of the landowners and the producers are clearly not identical, but they are interrelated, and the court sees no clear error or manifest injustice in the requirement for the landowners' consent.

## III. CONCLUSION

L.D. Drilling Defendants' Motion for Reconsideration and Clarification (Doc. 473) is denied.  All counsel are reminded of the clear purpose of a legitimate motion to reconsider. Unnecessary motions to reconsider waste this court's time, cause delay in the progress of this case and extra expense to other parties.

IT IS SO ORDERED.

Dated this  7th   day of May 2012, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE