```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF KANSAS


Northern Natural Gas Company,    )
                                 )
                                 )
Plaintiff,                       )     CIVIL ACTION
                                 )
v.                               )     No. 10-1232-MLB-DWB
                                 )
Approximately 9117.53 acres in   )
Pratt, Kingman, and Reno         )
Counties, Kansas, and as further )
described herein,                )
                                 )
Tract No. 1062710 containing     )
80.00 acres more or less,        )
located in Kingman County,       )
Kansas, and as further described )
herein; et al.,                  )
                                 )
                                 )
Defendants.                      )
```

**MEMORANDUM AND ORDER**

This matter is before the court on the following:

    1. Northern's Objection to Appointment of Proposed Alternate Commissioner Kenton L. Hupp (Doc. 513);
    2. Val Energy defendants' opposition to the objection (Doc. 516); and
    3. L.D. Drilling opposition to the objection (Doc. 517).

**I. Summary**

The court previously identified prospective commissioners to determine just compensation pursuant to Fed.R.Civ.P. 71.1(h)(2). (Doc. 497). It also granted a request by Northern for examination of prospective alternate commissioner Kenton L. Hupp. Northern now

1

objects to the appointment of Mr. Hupp, arguing his appointment would present several conflicts of interest.

## II. Standard of Review

Rule 71.1(h)(2)(C) provides that the parties may not propose, but may "for good cause" object to prospective commissioners. The rule does not state what constitutes good cause, but the purpose of the rule "is to insure that unbiased and competent commissioners are appointed." Fed.R.Civ.P. 71.1 advisory committee note, 1985 amendment. Toward that end the rule gives litigants rights to participate in the appointment of commissioners – including a right to object for cause -- "that are roughly comparable to the practice with regard to jury selection." Id. Cf. United States v. Wallace, 201 F.2d 65, 67 (10th Cir. 1953) (finding it inappropriate to appoint commissioners who had previously expressed an opinion as to the land's value; "[a] juror who has formed and expressed an opinion about the issues in a case is ordinarily regarded as disqualified").

No challenge has been raised here to the competence of Mr. Hupp to serve as a commissioner. His unquestioned professional qualifications as a petroleum engineer make him well suited for the position. The court's inquiry also satisfies it that his experience and reputation in the field make him suitable for the appointment. The sole claim is that his appointment would give rise to an impermissible conflict of interest or the appearance of a conflict.

2

One commentator has noted that the circumstances amounting to a disqualifying conflict of interest are not well-defined. 1 Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary Rule 71.1, n.68 (2012 ed.). Courts were previously divided on whether the conflict-of-interest standard for judges in 28 U.S.C. §455 applied to special masters and to land commissioners. See Guardian Pipeline, L.L.C., v. 950.80 Acres of Land, 525 F.3d 554, 556 (7th Cir. 2008)(listing cases). In response, the Supreme Court amended Rule 53(b) in 2003 to expressly subject special masters to the standards of §455. Guardian Pipeline, 525 F.3d at 556. But the Court left the powers and duties of commissioners intact in Rule 71.1 even though commissioners' powers are defined by reference to certain other subsections of Rule 53. This differing treatment suggests §455 applies to special masters but not to commissioners. Moreover, Rule 71.1 "treats commissioners more like jurors than like judicial officers." For these reasons, since 2003 "no court has held that §455 supplies the standards for members of commissions in condemnation proceedings." Guardian Pipeline, 525 F.3d at 556.

Yet even those cases suggesting §455 does not apply have looked to the statute in determining whether disqualification of a commissioner is warranted. See Guardian Pipeline, 525 F.3d at 556 ("Let us assume, however, that §455 applies."); Rockies Express Pipeline, LLC v. 4.895 Acres of Land, 2010 WL 3001665, *4 (S.D.

Ohio, July 30, 2010) ("[i]t does not matter whether §455 technically applies, because the type of concerns animating that statute <u>should</u> apply to commissioners and <u>can</u> be applied by this Court under its inherent authority to select and appoint commissioners,…")[emphasis in original].

In <u>Rockies Express Pipeline</u>, supra, an objection was made that a commissioner had a conflict of interest because the law firm in which he was a partner had been defended in a malpractice action by counsel for the condemnor. The alleged conflict did not come to light until after the commission issued a report and recommendation. The district court sustained the objection even though it found no evidence of actual bias on the part of the commissioner. It did so under an "appearance of impropriety" standard:

> If the average man or woman on the street would pause at the representation involved here, then the risk of even an ultimately groundless-given-who-is-involved perception of possible partiality is enough to warrant select disqualification in the absence of party waiver. There may be no hint of actual partiality, but even a chance of perceived impropriety is enough to call for overcompensation in the name of obviating any questions as to the fairness of the proceedings. Even if Rule 71.1, Rule 53, § 455, and any potentially if perhaps only tangentially relevant advisory opinions do not expressly or even necessarily call for accepting Defendants' impression of the proceedings as tainted, this Court's concern for unquestionable actual and apparent propriety compel today's disposition. The Court would remove a prospective juror from the jury pool if he or she, or a family member, were represented by counsel. This Court would also act to address such a situation if, during jury deliberations, it came to light that a juror has such a professional connection with trial counsel. The same concern

> for avoiding situations in which impartiality might reasonably be questioned animates this Court's actions today.

Rockies Express Pipeline, 2010 WL 3001665, *5.

## III. **Facts**

The facts surrounding Mr. Hupp's relationship with the litigants are essentially undisputed. In 1999 or thereabouts, an attorney engaged Mr. Hupp on behalf of Nash Oil & Gas, a defendant herein, to evaluate Northern's claim that two Nash wells on the Young and Holland leases were producing Northern storage gas from the Cunningham Storage Field. Mr. Hupp reviewed documents relating to that issue and requested a number of additional documents from Northern. The purpose of that inquiry was to determine if the information Northern had backed up its claim that Nash was producing storage gas. He recalls a meeting in Pratt where there was some discussion of gas analysis provided by Northern.

Mr. Hupp also spoke during that time frame with the principal and operator for Trans Pacific Oil Corporation, which was similarly involved in a dispute with Northern about possible production of storage gas. Both Nash and Trans Pac were adverse to Northern in the prior matter. Mr. Hupp met with Kent Deutsch of Trans Pac and reviewed the area.

Mr. Hupp does not recall but may have participated as a Nash representative in a meeting between Nash and Northern and their attorneys. Due to the passage of time, Mr. Hupp cannot recall the

5

specifics of his engagement and cannot recall if he formed any opinion as to whether the Nash wells were producing storage gas. He does not believe he reached the point of making that determination. His records relating to the matter were likely disposed of when he subsequently moved his office.

A letter from Nash's attorney to Northern's attorney in May of 2000 shows that Jerry Nash declined Northern's request to sign an agreement tolling the statute of limitations. (Doc. 500-3). The letter asserted that if Northern could produce some evidence that the two Nash wells were producing storage gas, Nash would reconsider his position, but "[t]o date, no such information has been furnished to Mr. Nash or to his consulting engineer, Kenton Hupp." The letter also asserted that negotiations over Northern's possible purchase of the wells broke down "when Northern unrealistically decided that the only offer would be based on Mr. Nash's tangible costs in the wells or a salvage value. Mr. Nash would consider transferring these wells to Northern for their reasonable fair market value. That is, the reasonable fair market value without the cloud of Northern's claim." Mr. Hupp was copied on the letter.

The dispute over the two Nash wells resulted in litigation in 2004. Mr. Hupp was not retained as an expert in connection with that litigation.

In late 2010 or early 2011, Mr. Hupp was engaged by Kenny Gates, a principal in Pratt Well Service and Iuka-Carmi, to estimate oil and gas reserves for the Schwertfeger 1-23 well. Mr. Hupp knows Gates well and has known him for over 20 years. He has done work for Gates in the past. Pratt Well Service and Iuka-Carmi are defendants in this condemnation proceeding and the Schwertfeger 1-23 well is involved in the condemnation. Gates wanted this calculation because Northern indicated it was interested in purchasing the well. Hupp estimated gas reserves for the well using historical sales figures and assuming a 10% decline rate. He did not take into consideration whether its production was tied into the storage field. The bill for his work amounted to $300.

Mr. Hupp was previously designated as an expert witness in this condemnation proceeding by an attorney for Pratt Well Service, Iuka-Carmi and Noble Gas. (Doc. 395). The evidence is clear, however, that the attorney did so without consulting with Mr. Hupp and Hupp was not even aware he had been so designated. The attorney did so after talking to Ken Gates, the principal of Pratt Well/Iuka-Carmi, who told the attorney he would like to have Hupp as his expert.

Mr. Hupp has "done quite a bit of work" for VAL Energy in the past and continues to do so. He prepares ad valorem tax renditions for them on an annual basis for their producing leases. The tax valuation is based on a well's production history and a projection

7

of reserves. Mr. Hupp has known Todd Allam of VAL Energy for about 25 years and considers him a friend. Hupp has done work for VAL Energy since 1986.

**IV. <u>Discussion</u>**

Northern contends Mr. Hupp should be disqualified for three reasons: (1) he was previously adverse to Northern in a related matter; (2) he is financially tied to some of the parties in this litigation; and (3) he has been designated as an expert by a party to the case and has performed work that renders him a potential witness.

Starting with the last point first, the fact that Mr. Hupp was previously designated as an expert in this proceeding does not disqualify him. The uncontroverted evidence shows that he was designated without his knowledge or consent. The designation in no way shows or suggests that he would not or could not be a fair and impartial commissioner. <u>Cf</u>. <u>Sao Paulo State of Fed. Repub. Of Brazil v. American Tobacco Co., Inc.</u>, 535 U.S. 229 (2002) (no recusal required where judge's name erroneously listed as sponsor of amicus brief). Additionally, Northern's proclamation that it "is entitled to review all data upon which Hupp relied in forming his opinions and is entitled to seek Hupp's deposition as this matter proceeds" (Doc. 513 at 9) is nothing less than an argument conjured up to seek disqualification rather than a legitimate expression of

8

concern about Mr. Hupp's ability to be fair and impartial. All together, the court is amazed that Northern would rely on such a patently unfounded basis to object to a highly qualified prospective commissioner.

Aside from that question, the evidence shows Mr. Hupp's prior work estimating oil and gas reserves for the Schwertfeger 1-23 well bears on the subject matter of the condemnation proceeding. The amount of the reserves would affect the value of the interests being condemned and would impact the determination of just compensation. And although the work involved only a single well, the same analysis could <u>arguably</u> apply to other wells in the proceeding. In a sense Mr. Hupp as a commissioner could be in the position of reviewing his own work or opinion as to the value of the wells' reserves. This fact is clearly mitigated by the nature of the work he actually performed. It appears to have been more of a perfunctory mathematical calculation than a subjective analysis of the underlying strata, and Mr. Hupp was not asked to make any assumptions or assessments about the presence or absence of storage gas.

The evidence also shows Mr. Hupp has an ongoing business relationship with VAL Energy and Iuka-Carmi, both defendants in the case, which Mr. Hupp expects will continue. It consists primarily of performing ad valorem tax valuations. Some of the valuations may

9

relate to wells involved in the condemnation. The evidence is scant as to the extent of any financial interest involved. Indeed, Northern's examination produced no suggestion that this business relationship would in any way impair Mr. Hupp's ability to impartially find the facts or exercise his professional judgment in this proceeding.

Finally, Mr. Hupp previously performed work for Nash that bears a direct relation to an issue involved in the condemnation – namely, whether wells owned or operated by the defendants have produced storage gas from the Northern storage field. Mr. Hupp's work occurred over ten years ago and it is not surprising that he remembers few details from the engagement. It is not at all clear whether he formed any opinion about the matter at the time. Northern is arguably in the best position to know that fact since the evidence indicates Mr. Hupp's file was turned over to Northern's counsel in 1999. (Doc. 500-2). Moreover, the evidence shows Mr. Hupp has no present opinion about the matter and could impartially decide the question based on evidence presented in this proceeding.

Taken as a whole, the evidence shows no actual bias or prejudice on Mr. Hupp's part that would disqualify him from serving as a commissioner. Cases such as <u>Rockies Express Pipeline</u> suggest that an <u>appearance</u> of a conflict, even when no actual conflict

exists, is enough to disqualify a prospective commissioner. Rockies Express Pipeline, 2010 WL 3001665 at *5 ("There may be no hint of actual partiality, but even a chance of perceived impropriety is enough to call for overcompensation in the name of obviating any questions as to the fairness of the proceedings."). The rationale for this view is that public confidence is furthered by avoiding even the appearance of a conflict. Whether public confidence here would be furthered by excusing a highly qualified commissioner on the grounds set forth is debatable. The court is reminded that Northern sought a commission in the first place by arguing that confidence in the proceeding would be boosted by having persons with special expertise decide what the interests it sought to condemn were worth.

Under the standard of Rockies Express Pipeline the court reluctantly concludes that Mr. Hupp should be excused. The work that Mr. Hupp previously performed for Nash -- examining Northern's claim that a Cunningham area well was producing storage gas -- is closely related to a central issue in this proceeding. That issue could materially affect the amount of just compensation to be paid. Additionally, his subsequent work estimating reserves for the Schwertfeger 1-23 well is directly tied to an issue in the condemnation.

11

The court reaches this conclusion with great reluctance because, frankly, the evidence suggests Mr. Hupp has the expertise, sound judgment and character to be an excellent commissioner. His unique knowledge of the issues involved is not easily replaced. But to avoid even the appearance of a conflict, the court will sustain the objection to the appointment.

The court will now select and propose another alternate commissioner. The parties, and especially Northern, are reminded that in a state such as Kansas with a relatively small population, it is not uncommon or unexpected that a person with unique expertise in the oil and gas industry would have some business relationship with parties to a lawsuit involving that area of expertise. "Commissioners are supposed to bring expertise to the task, and they could not do so if the very knowledge and experience that made their views desirable also disqualified them." Guardian Pipeline, 525 F.3d at 556.

## V. Conclusion

Northern's Objection to Appointment (Doc. 513) is **SUSTAINED**. The court will identify an additional alternate commissioner as time permits. The court thanks Mr. Hupp for his willingness to serve and excuses him from further participation in the matter.

IT IS SO ORDERED.

12

Dated this 24th day of October, 2012 at Wichita, Kansas.

                                              s/Monti Belot
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE