**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) )<br>)<br>) |
| Plaintiff, | ) ) |
| v. | ) )    Case No. 10-1232-MLB-DWB |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas and as further described herein; | )<br>)<br>)<br>)<br>) |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman County, Kansas, and as further described herein, et al. | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM AND ORDER**

On Wednesday, January 23, 2012, the undersigned magistrate judge was

contacted on two occasions by counsel during depositions being taken by

defendants of Northern's witnesses.  A dispute arose in the first deposition when it

was determined that the witness had been provided with a CD containing documents

selected by Northern's counsel for his review prior to his deposition.  During

questioning, the witness acknowledged that he had reviewed these documents prior

to his deposition and that they did refresh his recollection.  Defendants' counsel then

requested the CD for review and Northern's counsel refused, claiming that the selection of documents by counsel for review by the witness constituted attorney work product. It was undisputed that all documents on the CD were documents which Northern's counsel had previously produced to defendants during paper discovery in this case.

Afer hearing statements of counsel during the first call, the court decided that defendants were entitled to review the CD. However, the court allowed Northern to review the CD over the noon recess to determine if any of the specific documents on the CD might individually constitute attorney work product or attorney notes that might raise additional issues of production. Counsel for Northern indicated that they did not believe that any of the separate documents on the CD were items of attorney work product or attorney client privilege.

Later in the afternoon, the magistrate judge was contacted again about two additional depositions of Northern witnesses that were to be taken on Thursday and Friday, and the same issue was presented: if the witnesses indicated that they reviewed the CD documents provided to them prior to their deposition, were defendants entitled to review the CD's. Since it was represented that the CD's contained voluminous documents, defendants requested that the two upcoming depositions be postponed until they had the opportunity to review the CD

documents for each witness.  Northern objected to any continuance and continued to object to production of any documents that were selected by counsel for review by the witnesses.  After hearing arguments, the court determined that the depositions should proceed so that the parties could make their record about whether the witnesses had reviewed the documents and whether the review had refreshed their recollection.  Defendants were also to proceed with their prepared outline for the depositions, leaving the issue of production of the CDs for future resolution and possible re-deposition of the witnesses if the court subsequently allowed defendants to review the CD documents.  The court also invited further argument of this issue at the status conference which was scheduled for the next Wednesday, January 30.

The undersigned magistrate judge followed up by sending a letter to counsel on January 26, 2013 (Doc. 642), which set out the above procedural background, invited additional argument at the upcoming status conference, and included brief discussion of four cases in this district concerning the issue of whether documents selected by counsel and given to a witness prior to a deposition for review constitute work product.  *See* State of New Jersey v. Sprint Corporation, 258 F.R.D. 421, 433-37 (D. Kan. 2009);  Audiotext Communications Network, Inc. v. U.S. Telecom, Inc., 164 F.R.D. 250 (D. Kan. 1996); Aguinaga v. John Morrell & Co., 112 F.R.D.

671 (D. Kan. 1986); and <u>Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.</u>, No. 01-2009, 2009 WL 1478659 at * 1 (D. Kan. Nov. 8, 2009).

Prior to the January 30 status conference, counsel for L.D. Drilling submitted a brief on the issue of whether documents selected by counsel and given to a witness for review prior to a deposition constitute work product. (Doc. 645.)

At the status conference on January 30, 2013, the court entertained oral argument on this issue. Counsel for Northern presented the court with copies of numerous cases from various jurisdictions dealing with the issue in dispute.[1]

---

[1] In order to complete the record, the following is a list of the cases provided to the court: <u>ICE Corporation v. Hamilton Sundstrand Corporation</u>, No. 05-4135-JAR, 2007 WL 4334918 (D.Kan., Dec. 6, 2007). (Sebelius, M.J.); <u>State of New Jersey v. Sprint Corporation</u>, 258 F.R.D. 421 (D. Kan. 2009) (O'Hara, M.J.); <u>Williams v. Sprint/United Management Company</u>, No. 03-2200-JWL, 2007 WL 634873 (D. Kan., Feb. 27, 2007) (Waxse, M.J.); <u>Shelton v. American Motors Corporation</u>, 805 F.2d 1323 (8th Cir. 1986); <u>Frazier v. Ford Motor Company</u>, No. 05CV04077-JLH, 2008 WL 4809130 (W.D.Ark., Oct. 31, 2008); <u>Sporck v. Peil</u>, 759 F.2d 312 (3rd Cir. 1985); <u>In re Allen v. McGraw</u>, 106 F.3d 582 (4th Cir. 1997); <u>James Julian, Inc. v. Raytheon Company</u>, 93 F.R.D. 138 (D.Del. 1982); <u>Petersen v. Douglas County Bank & Trust Company</u>, 967 F.2d 1186 (8th Cir. 1992); <u>Biliske v. American Live Stock Insurance Company</u>, 73 F.R.D. 124 (W.D.Okla. 1977); <u>United States v. Reynolds</u>, 345 U.S. 1 (1953); <u>Hesselbine v. Wedel</u>, 44 F.R.D. 431 (W.D. Okla. 1968); <u>In re September 1975 Grand Jury Term, Thompson v. United States of America</u>, 532 F.2d 734 (10th Cir. 1976); <u>Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.</u>, 164 F.R.D. 250 (D. Kan. 1996) (Rushfelt, M.J.); <u>Aguinaga v. John Morrell & Company</u>, 112 F.R.D. 671 (D. Kan. 1986) (Theis, J.); <u>Pepsi-Cola Bottling Company of Pittsburg, Inc. v. Pepsico, Inc.</u>, No. 01-2009-KHV, 2001 WL 1478659 (D. Kan., Nov. 8, 2001) (Waxse, M.J.); <u>In re Seroquel Products Liability Litigation</u>, No. 6:06-md-1769-Orl-22-DAB, 2008 WL 215707 (M.D. Fla., Jan. 24, 2008); <u>Nutramax Laboratories, Inc. v.</u>

(continued...)

After hearing arguments of counsel and reviewing the materials submitted by the parties, the court is prepared to rule.

## I.  The Claim of Attorney Work Product.

### A.  The lack of Tenth Circuit Authority.

The court notes, and the parties do not disagree, that the Tenth Circuit has not ruled on the issue of whether the attorney's selection of documents to show a witness in preparation for a deposition constitute work product.  Northern argues, however, that a 1976 Tenth Circuit case involving a grand jury subpoena contains language which, according to Northern, "suggests" that the Circuit would would find that an attorney's selection of documents constitutes work product.  *See* In re

---

[1](...continued)
Twin Laboratories, Inc., 183 F.R.D. 458 (D. Md. 1998);  In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379 (2nd Cir. 2003);  In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988);  Gould Incorporated v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676 (2nd Cir. 1987); Chase v. Nova Southeastern University, Inc., No. 11-61290-CIV, 2012 WL 204173 (S.D. Fla., Jan 24, 2012);  Wollam v. Wright Medical Group, Inc., No. 10-cv-03104, 2011 WL 4375016 (D.Colo., Sep. 20, 2011);  Resolution Trust Corporation v. Heiserman, 151 F.R.D. 367 (D. Colo. 1993).  Northern also provided copies of two articles from legal periodicals, Paul D. Breitner, "Work Product and the Attorney's Selection Process: Spoon-feeding the Opposition or Preserving the Adversary System?," 79 FLORIDA BAR JOURNAL 20 (Jan. 2005) and Gillian G.W. Egan, "Protecting Work Product in Rule 30(b)(6) Depositions," ABA SECTION OF LITIGATION, PRETRIAL PRACTICE & DISCOVERY, Oct. 27, 2011 and a copy of Rule 1101, Fed. R. Evid.

September 1975 Grand Jury Term, Thompson v. United States of America, 532 F.2d 734, 738 (10th Cir. 1976) ("The work-product privilege extends to the 'production of material assembled by an attorney in preparation for impending litigation. Natta v. Hogan, 10 Cir., 392 F.2d 686, 693.'" The court disagrees with Northern's interpretation.

First, the Tenth Circuit in the Grand Jury case refused to even reach or decide the work-product claim, stating that the issue was one for ultimate determination at trial. *Id.* Second, the language quoted in the Grand Jury case from Natta v. Hogan about assembly of material was only a brief summary by the Natta of the general principle of work product as announced in Hickman v. Taylor, 329 U.S. 495 (1947), and Natta said nothing about the specific issue now before this court. *See* 392 F.2d at 693. Third, the court in Natta rejected any work product claim on most of the contested documents, noting that the objecting party could not hide any research, tests and experiments that were pertinent to their patent application behind the work product doctrine. *Id.* Finally, the only document the Natta court found to be protected by the work product privilege was a sheet of  handwritten notes of a named attorney. *Id.* None of the documents in issue in this case are attorney notes. The court simply cannot read into these two Tenth Circuit cases the meaning suggested by Northern.

B.    The Cases in the District of Kansas.

The parties and the court have gathered numerous federal court cases from this district on the issue of whether an attorney's selection of documents shown to a witnesses to prepare that witness for deposition or trial testimony are protected work product of an attorney, and whether those documents must be identified or produced during the testimony of the witness.  The cases, in chronological order are: Aguinaga v. John Morrell & Company, 112 F.R.D. 671 (D. Kan. 1986) (Theis, J.); Bohannon v. Honda Motor Company Limited, 127 F.R.D. 536 (D. Kan. 1989) (Rushfelt, M.J.);  Audiotext Communications Network, Inc. v. U.S. Telecom, Inc., 164 F.R.D. 250 (D. Kan. 1996) (Rushfelt, M.J.);  Beach v. City of Olathe, No. 99-2210-GTV, 2000 WL 960808 (D. Kan., Jul. 16, 2000) (Waxse, M.J.);  Am. Cas. Co. of Reading, PA v. Healthcare Indem., Inc.,  No. 00-2301-DJW, 2001 WL 1718275 (D. Kan., May 21, 2001) (Waxse, M.J.);  Raytheon Aircraft Company v. United States Army Corps of Engineers, 183 F.Supp. 2d 1280 (D. Kan. 2001) (Belot, J.);  Pepsi-Cola Bottling Company of Pittsburg, Inc. v. Pepsico, Inc., No. 01-2009-KHV, 2001 WL 1478659 (D. Kan., Nov. 8, 2001) (Waxse, M.J.);  Pepsi-Cola Bottling Company of Pittsburg, Inc. v. Pepsico, Inc., No. 01-2009-KHV, 2002 WL 113879 (D. Kan., Jan. 22, 2002) (Vratil, J.);  Williams v. Sprint/United Management Company, No. 03-2200-JWL, 2007 WL 634873 (D. Kan., Feb. 27,

2007) (Waxse, M.J.);  U.S. Fire Ins. Co v. Benge N. Am., Inc., No. 05-2192-JWL, 2008 WL 2548129 (D. Kan. Jun. 23, 2008) (Waxse, M.J.); and State of New Jersey v. Sprint Corporation, 258 F.R.D. 421 (D. Kan. 2009) (O'Hara, M.J.).

Of the above cases, only Judge Theis' opinion in Aguinaga finds that an attorney's selection of documents shown to a witness constitute attorney work product that should be protected from disclosure.  The other cases have chosen not to follow Aguinaga and conclude that, in facts similar to those presented in this case, an attorney's selection of documents shown to a witness in preparation for deposition testimony does not constitute work product where those documents have already been produced during discovery.  While Northern argues that some of these cases, such as Audiotext, are factually distinguishable from the present case, the court does not find that any of the factual differences affect the efficacy of the underlying legal rulings.  This court agrees with the two district judges and three magistrate judges from this district who have analyzed this issue and determined that the attorney's selection process does not result in material protected by the work product doctrine, and adopts the arguments and analysis of those cases.

C.     Consideration of Cases from Other Jurisdictions.

In reaching its conclusion about the work product claim raised by Northern, the court is very aware of the existence of authority from other courts, including

courts of appeal in other circuits, which would conclude that the attorney's selection of documents to show a witness in preparation for a deposition are protected opinion work product. The genesis of this approach to work product claims is based in large part on two court of appeals opinions in 1985 and 1986: Sporck v. Pehl, 759 F.2d 312 (3rd Cir. 1985); and Shelton v. American Motors Corporation, 805 F.2d 1323 (8th Cir. 1986). Sporck was a divided opinion with a strong dissenting opinion by Judge Seitz. Judge Theis cited Sporck in Aguinaga which was also decided in 1986.

Much has changed in the landscape of federal pretrial discovery and case management since 1986. Some of those changes now require counsel to provide early specific information about their case that was not previously required. Recent amendments to the Federal Rules and similar case management orders now require information from counsel about the nature and preparation of their case which some courts in 1985 and 1986 might have considered to be attorney work product. For example, Fed. R. Civ. P. 26 was amended in 1993 to require early disclosure of information concerning persons who are likely to have discoverable information relevant to the factual disputes between the parties and to describe the nature and

location of potentially relevant documents and records.[2]   The 1993 amendments also required the parties to obtain a detailed and complete written report from any persons who were retained or specially employed to provide expert testimony.[3]   The reasoning behind such changes in the rules was to accelerate the exchange of information about the case.

Courts have also entered special discovery or case management orders requiring early disclosures, the identification of exhibits to be used in deposing a witness prior to the date of the deposition, etc., and have upheld such orders in the face of objections that they impinge on an attorney's opinion work product.  *See e.g.,*  In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988) ("not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product.  Were the doctrine to sweep so massively, the exception would hungrily

---

[2]   While this disclosure obligation was narrowed somewhat in the 2000 amendments to Rule 26, early disclosure is still required.

[3]   Rule 26(a)(2)(B) and 26(b)(4)(C) were amended in 2010 concerning discovery related to experts.  However, the rule still requires a disclosure of all facts or data considered by the witness in forming the opinions to be offered, and allows discovery of the identity of all facts and data which the party's attorney provided to the expert and which the expert "considered" in forming the opinion, whether or not the expert relied upon such facts.  See 2010 Advisory Committee Notes to Rule 26.

swallow up the rule."); <u>Resolution Trust Corporation v. Heiserman</u>, 151 F.R.D. 367 (D. Colo. 1993).

One early court of appeals decision by the Second Circuit indicated that while the rule formulated in <u>Sporck</u> and <u>Shelton</u> may be applicable so as to conclude that the selection and compilation of documents by counsel can be protected opinion work product, "its application depends upon the existence of a real, rather than speculative, concern that the thought processes of WMW counsel in relation to pending or anticipated litigation would be exposed." <u>Gould Incorporated v. Mitsui Mining & Smelting Co., Ltd.</u>, 825 F.2d 676, 680 (2nd Cir. 1987). In a more recent case, the Second Circuit rejected a work product claim in the context of a grand jury subpoena where the claim was unsupported by any *in camera* identification or submission of the documents, and "is simply too conclusory to meet their burden to show a 'real rather than speculative, concern' that the ordered production will reveal counsel's thought processes and strategies." <u>In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 381 (2nd Cir. 2003).

Another later decision from the Fourth Circuit cited <u>Sporck</u> and <u>Shelton</u> in concluding that an attorney's selection and arrangement of documents is protected as opinion work product. <u>In re Allen v. McGraw</u>, 106 F.3d 582, 608 (4th Cir. 1997). That case, however, involved the deposition of the attorney who had conducted the

investigation and who had assembled and selected the records as part of her investigation. Even with the decision in <u>Allen</u>, however, lower courts in the Fourth Circuit subsequently noted that <u>Allen</u> did not hold that the protection afforded to opinion work product was absolute, and concluded that:

> If otherwise discoverable documents, which do not contain pure expressions of legal theories, mental impressions, conclusions or opinions of counsel, are assembled by counsel, and are put to a testimonial use in the litigation, then an implied waiver of the work product doctrine takes place, and the documents themselves, not their broad subject matter, are discoverable.

<u>Nutramax Laboratories, Inc. v. Twin Laboratories, Inc.</u>, 183 F.R.D. 458, 467 (D. Md. 1998). In reaching this conclusion, the court noted that "the mere selection of otherwise discoverable documents by counsel falls closer to fact work product on the continuum than it does to core opinion work product." *Id.* at 466.

A review of the above decisions from other jurisdictions leads the court to believe that the hard and fast rule announced in <u>Sporck</u> and <u>Shelton</u> is not as solid today as it might appear. Courts in numerous situations have limited or qualified the ruling in those cases based upon the facts and circumstances presented.

Northern's counsel argued at the January 30 status conference that allowing defendants to see which documents Northern's counsel had selected and shown to witnesses during their preparation for depositions would disclose Northern's

counsel's trial strategies "from A to Z."  This argument, however, is wholly speculative and would not be sufficient to meet Northern's burden to clearly establish work product protection even if the court followed <u>Sporck</u>.  *See e.g.*, <u>Gould Incorporated v. Mitsui Mining & Smelting Co., Ltd.</u>, 825 F.2d at 680.

Furthermore, this argument has been rejected by cases from this district which have reviewed the rational used by the courts in <u>Sporck</u> and <u>Shelton</u>, but have chosen to instead follow the reasoning set out by the dissent in <u>Sporck</u>:

> The problem with the petitioner's theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent.  There are many reasons for showing a document or selected portions of a document to a witness.  The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition.  This is a far cry from the disclosure of the lawyer's opinion work product.  Even assuming that the documents were selected by the petitioner's attorney, the subject matter is so undifferentiated that its potential for invasion of work product is minuscule at best.

<u>Sporck</u>, 759 F.2d at 319 (dissenting opinion).  See e.g., <u>Pepsi-Cola Bottling Company of Pittsburg, Inc. v. Pepsico, Inc.</u>,  2001 WL 1478659 at * 2 (quoting the dissent from <u>Sporck</u>);  <u>Raytheon Aircraft Company v. United States Army Corps of Engineers</u>, 183 F.Supp. 2d at 1291(stating that a chief reason for rejecting the

argument that disclosure of documents selected by an attorney constitutes work product " is that often times the revelation of the underlying documents provides nothing insofar as the mental processes of the attorney is concerned" and therefore disclosing the list of documents consulted "does not permit an unfair 'peek' into the Corps' legal mind"); and State of New Jersey v. Sprint Corporation, 258 F.R.D. at 436 ("Having prepared literally hundreds of witnesses for deposition and trial while in private practice, the undersigned simply believes it is too big a leap to suggest that the mere identification of documents a witness reviews at the direction of counsel improperly provides a roadmap of the attorney's strategies and opinions.").

Finally, the court does not agree with suggestions that if an attorney's selection of documents are not protected by the work product doctrine, attorneys will choose not to prepare their witnesses as thoroughly, thus disrupting the efficient operation of the court system. Attorneys in Kansas have been adequately preparing their witnesses for depositions and trial for more than sixteen years since the decision in Audiotext, and the court is confident that experienced counsel will continue to do so.[4]

---

[4] The fact that there have been several opinions on this issue since Audiotext from judges in our court sitting in Kansas City, Kansas, may be attributable to the fact that counsel from Kansas City, Missouri appearing in our court may be accustomed to making such work product objections since they are located in the Eighth Circuit and

(continued...)

## II.     Application of Fed. R. Evid. 612.

Rule 612 deals with disclosures of writings used to refresh a witness's memory either (1) while testifying or (2) before testifying, if the court decides that justice so requires.  The purpose of the rule is "to promote the search of credibility and memory."  1972 Advisory Committee Notes to Rule 612.  Courts have held that the rule is applicable to depositions pursuant to Fed. R. Civ. P. 30(c).  *See e.g.,* Audiotext , 164 F.R.D. at 253.

In order to obtain disclosure of a writing used by a witness prior to testifying, a party must meet three conditions: (1) the witness must use the writing to refresh his or her memory;  (2) the witness must use the writing for the purpose of testifying;  and (3) the court must determine that production is necessary in the interests of justice.  Id. at 254.  The party must also show that the documents "actually influenced the witness' testimony."  *Id.*

In the present case it appears that elements (1) and (2) have been met as to the depositions of the two Northern witnesses that have been taken.[5]  In the first deposition, the witness Peshka acknowledged that he reviewed the material to

---

[4](...continued)
thus are bound by the decision in Shelton.

[5]  The deposition of a third Northern witness was delayed due to the illness of one of the defense counsel.

refresh his recollection and that the review in fact refreshed his memory.  In the second deposition, again it is undisputed that the purpose of the review of documents by the witness Dobbins was to refresh his memory for the purpose of testifying.  Northern stated at the January 30 status conference, however, that Dobbins testified that only two of the documents he reviewed actually refreshed his recollection.  This statement does not, however, protect the other documents that were reviewed from being produced.

Judge Rushfelt noted in Audiotext that "[a]ctual refreshment of recollection is immaterial."  Id.  In so holding he concluded that it would be fairer to allow production upon proof that the witness reviewed the document for the purpose of refreshing his recollection, and to require a showing that it in fact refreshed his memory would likely lead to arbitrary or capricious results.  Id.  See also Nutramax Laboratories, Inc. v. Twin Laboratories, Inc., 183 F.R.D. at 473 (rejecting an argument that the rule requires a deponent to admit that the review of documents enhanced the witness' ability to recall "for the obvious reason that, if correct, a witness could always avoid the reach of this rule by simply denying that the documents refreshed his or her recollection, regardless of whether that was true.").  Even if a witness only identifies a few documents out of all he reviewed

that actually refreshed his recollection, the court has ordered production of all the documents he reviewed.  Audiotext, 164 F.R.D. at 254.

Considering the representations concerning statements by both of the Northern witnesses that have been deposed, the court finds that the first two elements have been established and that review of the materials had an impact on the testimony of these witnesses.[6]

The court must then decide whether the interests of justice require that the materials be produced.  In Nutramax Laboratories, the magistrate judge described this decision as a balancing test, and he identified a illustrative, but not exhaustive list of factors that a court might consider in applying that test.  183 F.R.D. at 468-70.  Several of those factors appear to weigh in favor of allowing disclosure of the documents to the examining attorneys, although the court has not been provided with copies of the deposition testimony of any of the witnesses.  However, the

---

[6]  The court notes Northern's argument that it asked witness Dobbins whether he relied on any of the writings he reviewed for his testimony, and Dobbins stated that he did not.  However, Northern also stated that Dobbins acknowledged that two of the documents, one about a 1995 trial and the other a research report, did refresh his recollection.  It appears to the court that when a witness acknowledges that some writings refreshed his/her memory, the review of the documents had an impact on the witness' testimony whether or not he says he "relied" on the document in testifying.

court's general knowledge of the subject matter of this litigation provides a basis for applying the factors.[7]

One factor is when the events took place that are the subject of the examination. In this case, the question of what gas is in place in the zones which are being condemned by Northern, and whether that gas is storage gas that has migrated from the boundaries of the Cunningham Field, or is native gas, or a combination thereof, is a critical part of determining the value of the interests being condemned. Northern first started injecting storage gas into the field in 1979, and considered the field to be stable until approximately 1995 when defendants and other producers began producing gas nearby. *See* Northern Natural Gas Co. v. L.D. Drilling, Inc., 697 F.3d 1259, 1264 (10th Cir. 2012). In determining the amount of gas in now in place, Northern's expert witnesses have testified that they considered documents and data extending back to at least 1985, if not back to the first injection of gas into the field. Thus some of the information related to operation of the field and gas migration is thirty years old. Even more recent events, such as subsequent

---

[7] The court has not determined which witness, if any, Northern has designated as a Rule 30(b)(6) witness, and therefore considers these witnesses to be corporate employees who are to testify as fact witnesses. It has been argued that there is more need to know which materials were reviewed by a Rule 30(b)(6) witness in preparation for testimony since the substance of the testimony may be based on sources beyond the witness' personal knowledge. Nutramax Laboratories, 183 F.R.D. at 469.

FERC applications and other lawsuits concerning the field and gas migration have taken place some time ago. This augers in favor of producing the documents reviewed by the witnesses since the longer ago events occurred, the more likely that memory has been refreshed by reference to historical written materials.

When the documents were reviewed should also be considered. Here the review apparently took place shortly before the date of the noticed deposition. This strongly suggests that the sole purpose of the document review was to prepare for the deposition rather than for some other potential purpose.

Whether the documents themselves contain, in whole or in part, "pure" attorney work product may be important. Here, however, it appears to be undisputed that none of the documents shown to these witnesses contains any such pure attorney work product. This facts favors allowing review of the documents since they are factual in nature.

Whether the documents have been previously produced during discovery is another consideration. Here it appears that all documents reviewed by the witnesses had been produced by Northern during the paper discovery phase of the case. While this might seem to indicate that defendants should already be prepared to use documents they consider important during the deposition without the need to review the documents selected by Northern's attorneys, this must be considered in light of

the total volume of documents that Northern as produced.  The parties represent that

Northern has produced a huge volume of documents which is not surprising

considering the time period involved with the Cunningham Storage Field.  Nutramax

suggests that "if the documents previously produced are so voluminous or technical

that the party receiving them cannot readily be expected to grasp their significance,"

then this may favor allowing review of the documents since "[f]inding the critical

documents in a population of thousands may be like looking for a needle in a

haystack, even with the aid of modern technology."  183 F.R.D. at 470.  Here,

counsel for defendant Nash Oil has represented that the volume of documents

produced by Northern was so large that Nash's counsel could not properly use their

electronic search software to cull out relevant documents.  This would appear to

favor allowing review of the documents by the examiner.

Finally, the number of documents reviewed may be important.  Nutramax

points out that an argument can be made that if an attorney has culled through

thousands of documents to identify a population of several hundred documents, the

court might be less inclined to allow review than if the witness reviewed a single or

only a few documents.  On the other hand, Nutramax recognizes that an argument

can be made that if only a single document or very few documents have been

selected, this could suggest more about the attorney's thought process than if a

larger population had been selected.  See 183 F.R.D. at 470 and n. 20.   Here, it appears that defendants used 62 documents from the CD's in cross examining at least one of the two witnesses.  Without more information, however, the court simply cannot determine whether that the number of documents on the CDs that were given to the witnesses for review weighs in favor of, or against, allowing defendants to review the selected documents.

After considering the information provided about the documents reviewed and the depositions, the court finds that it is in the interest of justice to allow examining counsel to inquire of the two witnesses what documents the witnesses reviewed in preparation for the deposition, and also to allow examining counsel to review the actual documents prior to concluding the deposition of the witnesses.


CONCLUSION

As to the two Northern witnesses whose depositions were at issue during the phone calls to the magistrate judge, if defendants did not have the opportunity during the deposition to obtain  the documents provided to the witness by Northern's counsel, Northern shall produce such documents to defendants, and defendants will be allowed to re-convene the deposition for the purpose of inquiring about the documents.

As to future depositions, the court will not direct any party to produce documents which its counsel selected and showed to a prospective witness to prepare for a deposition until examining counsel has laid a proper foundation during the deposition to meet the elements of Rule 612.  Hopefully, the court will not be required to weigh in at every deposition on the question of whether or not the foundation is adequate.  All counsel should now be on notice concerning the court's position concerning the status of documents provided to a witness to review in preparation for a deposition so that additional future issues can be resolved among counsel without further court intervention.

**IT IS SO ORDERED**.

Dated this 5th day of March, 2013, at Wichita, Kansas.

 *s/  DONALD W. BOSTWICK*
Donald W. Bostwick
U.S. Magistrate Judge