# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, ) ) ) Plaintiff, ) ) v. ) ) Approximately 9117.53 acres in ) Pratt, Kingman, and Reno Counties, ) Kansas and as further described ) herein; ) ) Tract No. 1062710 containing 80.00 ) acres more or less, located in ) Kingman County, Kansas, and as ) further described herein, et al. ) ) Defendants. ) ) | Case No. 10-1232-MLB-DWB |

## MEMORANDUM AND ORDER

Presently before the court is a motion by Northern Natural Gas Company (Northern) seeking to compel defendant L.D. Drilling, Inc. to allow Northern to enter onto L.D. Drilling's leases in the "Section 28 Area"[1] for purposes of collecting gas samples. (Doc. 714). L.D. Drilling has filed a response objecting to any such testing (Doc. 730). The time has passed for the filing of any reply brief,

---

[1] The phrase "Section 28 Area" is a generic phrase used in this and the related tort litigation between Northern and the producers, including L.D. Drilling.

D. Kan. Rule 6.1(d)(1), and Northern has not filed any reply. Therefore the matter is submitted on the briefs and the court is prepared to rule.

**Factual Background**

The wells sought to be tested are located to the West of the Western boundary of the Expansion Area which was authorized by the FERC in its June 2, 2010 Order as a buffer zone to protect the integrity of the Cunningham Storage Field, and which is the subject of this condemnation action. Some of the wells are in sections immediately adjacent to the Cunningham Storage field, while others are located more than a section away from the field boundaries.[2] Northern argues that

> The results of the tests of the Wells to Be Tested are valuable evidence to demonstrate (1) whether a migration pathway exists between the western-most Expansion Area well areas; (2) the potential ratio of storage gas to native gas in these areas; and/or (3) pressure relationships between the Expansion Area and the Section 28 Area, which is needed for the opinions of Northern's experts with regard to volumes of storage gas and/or economically recoverable native gas in the western portions of the Expansion Area for which Northern has no well data.

---

[2] The eight (8) wells which Northern seeks to test include four in Section 28, two in Section 33, one in Section 20 and one in Section 29, all located in Township 26 South, Range 11 West, Pratt County, Kansas. (Doc. 714, at 3-4). *See also* map at Doc. 730-1.

(Doc. 714, at 4-5; Affidavit of Randal M. Brush, Doc. 714-3, at 2-3, ¶ 7). Northern points out that some of these wells were last tested by Northern in September 2010, and those tests established that the Section 28 wells were producing only native gas at that time.[3] (Doc. 714, at 4).

In August 2011, Judge Brown denied a request by Northern for a preliminary injunction that would allow Northern to test five of the L.D. Drilling's wells in Sections 28 and 33 on a semi-annual basis for several years. (08-1405, Doc. 477, at 5-6). Northern's request for testing at that time was based upon the statutory testing provisions of K.S.A. 55-1210(c)(2). In denying the request for testing, Judge Brown noted the "recent increase in overall production cited by Northern,"[4] but determined that Northern's motion also "implicitly recognizes that other measures to detect migration or to evaluate the effectiveness of its containment plan could be employed, such as observation wells . . . ." *Id*. at 7. Finally, Judge Brown also noted that "given the particular history of the litigation,

---

[3] The September 2010 tests were conducted as part of the discovery in the related tort case, Case No. 08-1405. (08-1405, Doc. 458, at 7 n. 5).

[4] Northern noted in briefing about the requested testing of the Section 28 wells that after the shut-in of wells in the Expansion Area which was required by Judge Brown's preliminary injunction of December 2010, the Section 28 wells experienced a substantial, steady and consistent increase in production. (08-1405, Doc. 470, at 7).

the court has some concern about over-use of the testing provisions as an unnecessary intrusion upon the defendants' property . . . ." *Id*. at 7-8.

Northern's present desire to test the eight identified wells also results from Northern's analysis that gas production from the "Section 28 wells" has substantially increased since 2010 when other wells located in the Expansion Area were ordered to be shut in by Judge Brown's December 22, 2010 Preliminary Injunction in the related tort case. (Doc. 714, at 4-5). However, unlike the testing request in 2011, the present request for entry and testing is not based on the statutory provisions of K.S.A. 55-1210(c)(2), but is based solely on the discovery provisions of the Federal Rules of Civil Procedure.[5]

### Discussion

Fed. R. Civ. P. 34(a)(2) provides that a party may serve on another party a request within the scope of Rule 26(b) "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may . . . test, or sample the property or any designated object or operation on it." Requested discovery, however, must be relevant to the claim or

---

[5] The court notes that K.S.A. 55-1210(c)(2) would not support testing of the two wells in Sections 20 and 29 since those wells are not located in areas adjoining the storage field.

defense of any party to the action. The general rules for determining relevance are well established.

> Federal Rule of Civil Procedure 26(b)(1) provides that [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.
>
> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.

Johnson v. Kraft Foods North America, Inc., 238 F.R.D. 648, 652-53 (D. Kan. 2006) (footnotes omitted). *See also*, Union Pacific R. Co. v. Grede Foundries, Inc., No. 07-1279-MLB-DWB, 2008 WL 48591 at *2 (D. Kan., Sep. 3, 2008);

High Point Sarl v. Sprint Nextel Corp., No. 09-2269-CM-DJW, 2012 WL 1533213 at *5 (D. Kan., Apr. 30, 2012); Northern Natural Gas Co. v. Approx. 9117.53 Acres, et. al., No. 10-1232-MLB-DWB, 2012 WL 1108547 at *3 (D. Kan., Mar. 31, 2012) (Discovery relevance is "minimal relevance," meaning that it is possible that the requested information may reasonably lead to the discovery of admissible evidence).

While L.D. Drilling raises several arguments why the requested testing should be denied, the court believes the most important issue to consider is whether the requested discovery is relevant to claims or defenses raised in this condemnation action. As previously noted, Northern urges three reasons why the requested testing of the Section 28 wells is relevant to the claims or defenses in this action. The court will address each in turn.

    *1.    Whether a migration pathway exists between the western-most Expansion Area well areas.*

Northern has been studying the formations underlying the Cunningham Gas Storage Field for many years, and over that period of time, Northern has reached differing conclusions concerning whether or how gas might be migrating from the field to adjoining properties. Northern urges that its changing positions about the field are triggered by additional factual information it has obtained over the years.

Its current expert witness, Mr. Randal Brush, has been analyzing the storage field since 2006.

For engineering purposes, it is undoubtedly true that the more information a petroleum reservoir engineer has about the general area being studied, the more comfortable the engineer feels about how the reservoir works. However, just because experts would like more and more information does not automatically mean that the information sought is relevant to claims or defenses in the case at hand. In this case, the sole issue for determination by the commission is the value of the property which Northern seeks to condemn. In reaching its determination of value, the commission must determine, as a factual matter, the volume of gas which is located beneath the Expansion Area, and possibly whether that gas is native gas or migrated storage gas.[6] Northern has not explained in its motion, how the well tests on property outside the Expansion Area (which is the area at issue in this condemnation) will assist in determining whether a specific migration pathway exists in the western area of the field, and whether the existence of any such pathway will in turn lead to discoverable evidence about the volume of gas in the Expansion Area or its value.

---

[6] The issue of whether Northern must compensate defendants for only native gas located in the area being condemned or for all gas, native and storage, is the subject of pending motions for summary judgment. *See* Doc's 678 & 699.

In fact, at a recent status conference, this issue was touched on briefly in discussions concerning whether testimony and proceedings in the prior <u>Trans Pac</u> case[7] should be allowed in evidence in this case. Defendants argued that in <u>Trans Pac</u>, Northern had completely different theories about the location and nature of any pathway allowing migration of gas out of the Cunningham Field. In arguing that the <u>Trans Pac</u> evidence should not be allowed, Northern's counsel stated:

> And if he wants to ask 'em why the pathway has changed
> from 2005 to what it is now, <u>if that's even relevant in
> this valuation</u>, that's fine too, as cross material. But its
> not evidentiary material. (emphasis added).

(Doc. 727, at 58 lines 6-10). The clear implication of this statement is that a determination of a migration pathway is not relevant to the valuation issue in this condemnation case. Because relevance on this issue is not clear or apparent, the burden is on Northern to establish relevance and it has failed to do so in its motion or attached exhibits.

    2.    *The potential ratio of storage gas to native gas in these areas.*

Presumably gas samples taken by the requested well tests would enable an expert witness to opine about whether the tested wells were producing native gas,

---

[7] <u>Northern Natural Gas Co. v. Trans Pacific Oil Corp.</u>, No. 02-1418-JTM, 2005 WL 2334688 (D. Kan. Sep. 23, 2005), *aff'd* 248 Fed. Appx. 882 (10th Cir. 2007) (unpublished).

storage gas or some combination of the two. However, the wells which Northern seeks to test are located outside the area which is the subject of this condemnation action. Two of the wells located in Sections 20 and 29 (Joanne 1-20 and Pruitt 1-29), are located more than a mile west of the Cunningham Field boundaries. Moreover, Northern has not even sought to identify the production history of those two wells in its motion.[8] The four wells in Sections 28 are approximately one-half mile or more from the Western field boundary, and the greatest production noted by Northern is from the two Koenemann wells, which appear to be at least three-quarters of a mile from the field boundary. *See* Doc. 714-3, at 4-5.

In his affidavit, Northern's expert witness does not explain in any detail how the gas sampling information from the wells to be tested will be used in determining the ratio of storage gas to native gas <u>in area which is being condemned</u>. This is particularly concerning since, as discussed below, Northern has its own observation well located <u>within the area to be condemned</u> and right on the Western boundary of the field (basically between the Western part of the field and the wells Northern wants to test). Without more detailed explanation, the possible relevance of gas sampling outside of the area to be condemned is not

---

[8] Exhibits 1 and 2 to Northern's Motion reflect only increased production from wells in Sections 28 and 33. (Doc. 714-3, at 4-5).

apparent, and Northern has not met its burden of showing relevance to the issues in this condemnation case.[9]

> 3. *Pressure relationships between the Expansion Area and the Section 28 Area, which is needed for the opinions of Northern's experts with regard to volumes of storage gas and/or economically recoverable native gas in the western portions of the Expansion Area for which Northern has no well data.*

Northern served its First Request for Inspection and Testing on L.D. Drilling on July 8, 2013. (Doc. 694). On July 15, 2013, approximately a month before Northern filed the present motion (and its expert witness prepared his affidavit), Northern completed an new observation well known as the OB 27-42. (08-1405 Doc. 526-1, at 3). That well is located right on the Western boundary of the Cunningham Storage Field adjacent to Section 28.[10] It is approximately equidistant from the Northern-most Section 28 well to be tested (Koenemann No.

---

[9] Northern's expert witness opines in his affidavit, that "[r]ecent production data from the Sections 28 and 33 wells indicate that the induced migration is now likely happening from the 2010 Extension Area into the Section 28 Area." (Doc. 714, at 2). This sounds more like a request for testing under K.S.A. 55-1210(c)(2) to determine ownership of gas in sections adjoining the storage field than a request for testing to determine the value of gas in and beneath the Expansion Area which is the subject of this condemnation action.

[10] Northern had previously drilled an observation well in August 2012 in a nearby location (the OB 27-41 well), but that well bore deviated to a point below land located outside Northern's field boundary in which Northern had no ownership interest. As a result, that well was not completed and was subsequently plugged and abandoned. (08-1405 Doc. 523-1, at 3).

2 well) and the Southern-most Section 33 well to be tested (Trinkle No. 1-33 well).

Although Northern has not yet reported any pressure data from the OB 27-42 well to the FERC, there is no reason to believe that such pressure data is not readily available to Northern, along with gas samples from the observation well.[11] It therefore appears that Northern does have well data that is located right inside the Western field boundary and much closer to the western part of the field than the L.D. Drilling wells it now seeks to test. This undermines the argument that well tests of wells located outside the field boundaries – sometimes more than a mile outside the boundaries – would be relevant to the valuation issues in this condemnation action. Because relevance is not apparent and Northern has not sufficiently established the relevance of the requested tests, the court finds that the requested discovery is not relevant to issues in this condemnation case.

Even assuming, *arguendo,* that the court were to accept Northern's allegations that well testing data from the L.D. Drilling wells is somehow relevant

---

[11] The court notes that the testing requested by Northern is for collection of gas samples and not for extensive pressure tests on the wells. The only pressure data contemplated under Northern's testing procedures is to test the well with a pressure gauge before any samples are collected in order to determine whether the pressure exceeds 1,800 p.s.i. which is the maximum rated pressure of the cylinders to be used to accept and store the gas samples. See Doc. 714-1, at 7.

to the valuation issues in this condemnation action, it appears that the relevance is marginal at best. Moreover, while the potential harm that might be occasioned by the requested discovery might be negligible, unlike testing ordered under K.S.A. 55-1210(c)(2), L.D. Drilling would have no assured remedies should problems develop during the testing procedures. The court is also mindful of Judge Brown's previous concerns in 2011 that Northern's continued attempts to test wells outside the boundaries of the area being condemned might be "an unnecessary intrusion upon the defendants' property . . . ." (08-1405, Doc. 477, at 7-8). Therefore even if the requested discovery was of marginal relevance to the valuation issues in this condemnation, the above factors would outweigh the ordinary presumption in favor of broad disclosure.

Finally, the court is concerned about whether such well testing, if allowed, would delay the completion of expert discovery in this case. In the May 22, 2013 status conference, the court inquired about additional fact discovery contemplated by the parties. The court does not recall any indication that there would be a request for well testing, and the court's order concerning that status conference does not contain any reference to well testing. (Doc. 674, at 2-3). The court did set a deadline of August 19, 2013 for the completion of the fact discovery

identified by the parties. *Id* at 3. The court also set a deadline of September 20, 2013 for exchange of expert reports. *Id*.

The request for well testing finally surfaced when Northern served their formal request for entry and testing of L.D. Drilling's wells on July 8, 2013. (Doc. 694). L.D. Drilling filed a timely response and objection to the requested entry and testing on August 7, 2013 (Doc. 710), and Northern's motion to compel was filed on August 19, 2013. (Doc. 714). According to Northern's motion, the requested tests are "needed for the opinions of Northern's experts with regard to volumes of storage gas and/or economically recoverable native gas in the western portions of the Expansion Area . . . ." (Doc. 714, at 5). On August 28, 2013, L.D. Drilling filed an unopposed motion for an extension of time to respond to Northern's motion to compel until September 17, 2013 (Doc. 717), and the unopposed extension was granted on August 30, 2013. (Doc. 723).

The court held another status conference on September 4, 2013. At that time the court extended the deadline for defendants to serve their expert reports, but the deadline for service of Northern's expert reports was not extended and their reports remained due on September 20, 2013. (Doc. 728, at 4). In fact, at the September 4, 2013 status conference, Northern stated that they had worked all summer on their expert reports and they would be ready to deliver their reports on

September 20, 2013. (Doc. 727, at 19 lines 10-15). Northern never requested that any of their expert reports be delayed until completion of the requested well testing, and apparently Northern's experts were able to finalize and serve their reports on September 20 without any of the requested well testing data.

If the requested well testing is now allowed after Northern's experts' reports have been finalized and produced, the court can only assume (based on prior experience in this case) that those reports would then be supplemented and/or revised. This would also undoubtedly result in requests to delay or supplement other expert reports or to re-depose certain expert witnesses. The court has set a tight schedule to complete expert discovery so that this case may be presented to the commission in the Spring of 2014, and any delays in the completion of expert discovery would severely impact that schedule. This strong likelihood of delay further weighs against the granting of the requested well testing at this late stage of discovery.

## Conclusion

Because the court concludes that the relevance of the discovery requested by Northern is not apparent and Northern has failed to meet its burden of showing

relevance, the court denies Northern's motion to compel entry and testing.[12]

Northern's request for its reasonable expenses and fees in preparing the motion to compel is therefore also denied.

**IT IS SO ORDERED**.

Dated this 7th day of October, 2013, at Wichita, Kansas.

                               s/ DONALD W. BOSTWICK
                               Donald W. Bostwick
                               U.S. Magistrate Judge

---

[12] Because the court has denied the motion to compel on the basis of lack of relevance, the court need not address the other issues raised by L.D. Drilling in opposing the requested testing. The court would note, however, that it has previously considered an argument by L.D. Drilling that such testing would result in disclosure of L.D. Drilling's trade secrets. (08-1405 Doc. 288, at 19-23).