IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>APPROXIMATELY 9117 ACRES IN PRATT, )<br>KINGMAN AND RENO COUNTIES, )<br>KANSAS, AND AS FURTHER DESCRIBED )<br>HEREIN; )<br>)<br>TRACT NO. 1062710 )<br>CONTAINING 80.00 ACRES MORE OR )<br>LESS, LOCATED IN KINGMAN COUNTY, )<br>KANSAS, AND AS FURTHER DESCRIBED )<br>HEREIN; ET AL., )<br>)<br>Defendants. )<br>) | **CIVIL ACTION**<br><br>No.  10-1232 |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Nash Oil & Co.'s motion to disqualify Stull & Beverlin, L.L.C. as counsel for the Huff Landowner Group due to a conflict of interest under Rule 1.9 of the Kansas Rules of Professional Conduct. (Doc. 777). The motion has been fully briefed and is ripe for decision. (Docs. 778, 792, 795). Nash Oil's motion is denied for the reasons herein.

**I.   Facts and Procedural History**[1]

This action to condemn property was brought by Northern Natural Gas Company under the authority of Natural Gas Act, 15 U.S.C. § 717f(h). The action was prompted by evidence that natural gas injected into Northern's underground storage field near Cunningham,

---

[1] The complete factual and procedural history of this case is available by viewing this court's prior orders. See Docs. 464, 691, 810, 941).

Kansas, was migrating out of the storage area and was being produced by wells to the north of the field. Northern obtained authority from the Federal Energy Regulatory Commission (FERC) to acquire certain property rights in this adjacent "2010 Extension Area."

The property to be condemned includes two underground formations (the Simpson and the Viola) underlying some 9,200 acres in the Extension Area. It also includes some surface rights and several well bores, which Northern has taken to implement a water injection plan to reduce gas migration. The court previously granted Northern's motion for immediate possession of the property being condemned. (Doc. 464.) The parties claiming interests in the various tracts taken by Northern include the Huff Landowner Group, represented by Stull & Beverlin, and Nash Oil, an oil and gas operator which had producing gas wells in the 2010 Extension Area.

Gordon Stull of Stull & Beverlin has represented Nash Oil and Jerry Nash, owner of Nash Oil, in the past. In 2003, Stull represented Nash Oil in a lease dispute concerning Tract #2262611, a tract which is subject to condemnation by Northern in this action. The dispute concerned a lease which was operated by Nash Oil. At the time, the landowners claimed that the lease terminated due to lack of production and the failure to pay the shut-in royalties. Jerry Nash contacted the Keenan Law Firm, which represented the landowners, and negotiated a new agreement with the landowners. The agreement was later drafted by Stull. The agreement gave Vision Investments a 20% interest in a new lease between the landowners and Jandie Oil Company. (Doc. 792, exh. H). Vision Investments is owned by Cheryl Nash, the wife of Jerry Nash. (Doc. 888 at 73). The lease is now operated by

L.D. Davis. In 1989 and 1997, Stull represented Jerry Nash in divorce proceedings. Stull no longer has any records concerning the divorce proceedings.

Nash Oil moves to disqualify Stull & Beverlin on the basis that Stull obtained confidential financial information concerning Nash in his prior representations and that their positions in this action are materially adverse.

## II. Analysis

A federal court sitting in Kansas and deciding a motion to disqualify for conflict of interest must look for guidance to the Model Rules adopted in Kansas and to Kansas case law construing those rules. See <u>Graham ex rel. Graham v. Wyeth Laboratories</u>, 906 F.2d 1419, 1422–23 n. 5 (10th Cir. 1990); <u>Koch v. Koch Indus.</u>, 798 F. Supp. 1525, 1531 (D. Kan. 1992). Rule 1.9(a) of the Model Rules of Professional Conduct precludes a lawyer who has formerly represented a client in a matter from representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Kan. S. Ct. Rule 226 at Rule 1.9(a).

### **Rule 1.9(a) Conflict**

Disqualification under Rule 1.9(a) is "dependent upon the party moving for disqualification to establish that (1) the attorney whose disqualification is sought formerly represented them in a matter; (2) the matter is substantially related to a matter in which the attorney now seeks to represent a new client; and (3) the new client's interest is substantially adverse to the interest of the party seeking

disqualification." Chrispens v. Coastal Refining & Marketing, Inc., 257 Kan. 745, 756, 897 P.2d 104 (1995).

There is no dispute that Stull previously represented Nash Oil in various matters and that Nash Oil does not consent to Stull's representation of the Huff Landowner Group. Thus, the issues presented by Nash Oil's motion are whether there is a "substantial relationship" between the matters Stull worked on while representing Nash Oil and/or Nash and Nash Oil's case here and whether the parties are substantially adverse. See id. (primary inquiry under Rule 1.9(a) is whether the cases where conflict has been alleged are substantially related). A hearing is not requiring when dealing with a Rule 1.9(a) motion for disqualification. Id. at 759.

In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations. See Koch, 798 F. Supp. at 1536. A commonality of legal claims or issues is not required. Koch, 798 F.Supp. at 1536. Such an evaluation requires the court to "reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client." Id. What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Id. Consequently, the "representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct." Id.

-4-

First, Nash Oil argues that Stull's previous representation of Nash Oil during a lease dispute with the landowners of Tract #2262611 is substantially related to this case because both matters concern a tract which is the subject of the condemnation action. As stated by Stull in his affidavit, and uncontested by Nash Oil, Stull's prior representation concerning Tract #2262611 was to draft an agreement between Nash and the landowners of Tract #2262611 which resulted in Vision Investments owning a 20% interest in a lease between the landowners of Tract #2262611 and Jandie Oil. Stull's uncontested affidavit also states that Stull did not negotiate the agreement with the attorneys for the landowners of Tract #2262611. Jerry Nash's affidavit regarding the representation is conclusory and does not provide any evidence from which the court could conclude that Nash disclosed confidential information. Therefore, given the circumstances concerning the prior representation, it is unlikely that Stull gained confidential information during the representation.

Moreover, there is no basis to conclude that any information Stull might have gained, confidential or otherwise, in the prior representation would be relevant to this case. In this case, the court must determine the amount of compensation due to all interested parties, including the landowners and Nash Oil. The lease concerning Tract #2262611 is not disputed as the parties have stipulated as to its validity. See Doc. 939 at 4. In order to determine the amount due to the interested parties, the court will allocate the compensation awarded by the Commission pursuant to the terms of the stipulated lease in which, notably, Nash Oil has no interest. Therefore, Nash Oil has not met its burden to show that the prior

representation concerning the lease dispute is substantially related to this case.[2]

Finally, Nash Oil argues that Stull's representation of Nash during divorce proceedings in 1989 and 1997 resulted in Stull being privy to Nash's financial state of affairs. (Doc. 778 at 2). Nash Oil makes no attempt to establish, however, that the divorce proceedings are relevantly interconnected to the issues in this case, i.e. the allocation or division of the value of the land determined by the commission. Stull's affidavit states that he has no independent recollection of Nash's financial status during the divorce proceedings and that his knowledge of Nash's financial status has been gained solely from the required disclosures made by Nash Oil in this case. Nash Oil has not disputed or controverted Stull's statements.

Moreover, Nash Oil has not explained how any knowledge of the financial condition of the company is relevant to the legal issue of whether the oil and gas leases in question have terminated. The parties and the court are treating the question of lease validity as strictly a legal question and at this point no further discovery is contemplated. Even if the financial condition of Nash Oil were somehow relevant to further proceedings in this case, the financial condition of the company at the time of Nash's prior divorces in 1989 and 1997 is so dated that it would be of no relevance to events which occurred in 2010 or 2011. The current financial condition of Nash Oil was made public in this case by Northern Natural Gas in filings made

---

[2] While Nash Oil has six tracts in this condemnation where the validity of the oil and gas leases are being questioned, Nash Oil has only identified a single lease on one tract in the Extension Area that Stull had any involvement with as an attorney. (Doc. 778-1 at ¶ 8.)

concerning the posting of security in connection with its motion for immediate possession. (Docs. 426 at 3-4; 426-2; 426-3). Therefore, the court finds that Nash Oil has not met its burden to establish that the matters in this case are substantially related to the prior divorce proceedings.

The court finds that Nash Oil has failed to meet its burden to establish that Stull has a conflict of interest under Rule 1.9 of the Kansas Rules of Professional Conduct.

### **Unjustified Delay**

Merits of the motion aside, the court further finds that Nash Oil's motion is untimely. "Motions to disqualify counsel are committed to the court's sound discretion." Lowe v. Experian, 328 F. Supp.2d 1122, 1125 (D. Kan. 2004). "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to a motion." Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship, 1989 WL 86963 at *3 (D. Kan. July 26, 1989). An unjustified delay in filing a motion to disqualify alone is sufficient grounds for denying the request. Redd v. Shell Oil Co., 518 F.2d 311 (10th Cir. 1975).

This case was originally filed in 2010. Stull filed an answer on behalf of certain landowners in September 2010. Nash Oil asserts that it did not file a motion to disqualify at that time because it did not believe that the landowners' position was materially adverse to Nash Oil. Nash Oil contends that its positions were not adverse until the court entered an order regarding the date of taking on July 2, 2013. (Doc. 691). Stull responds that there was always a possibility that the landowners and Nash Oil would disagree as to the

division of the condemnation award. Notably, Nash Oil was aware of a conflict in October 2012 when the producer defendants filed their position regarding the date of taking. In that filing, the producer defendants state, "Northern and the Huff Landowners have contended, or will contend, that the shut-in or the Producer-Defendants' Viola wells terminated the underlying oil and gas leases for lack of production, reducing their value . . . to zero." (Doc. 536 at 3).

Notwithstanding knowledge of the disagreement of the validity of the leases, a central issue in this case, Nash Oil waited almost fourteen months, until after the Huff Landowner Group rejected the settlement offer, to file this motion. This case is now in the final stages of litigation and the court finds that disqualification of Stull and Beverlin will result in prejudice to the Huff Landowner Group. See e.g., Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp., 261 F.R.D. 586, 591 (D. Kan. 2009).

Therefore, the court finds that the motion should be denied as unreasonably delayed.

**III. Conclusion**

Nash Oil's motion to disqualify Stull and Beverlin is denied. (Doc. 777).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 9th day of March 2015, at Wichita, Kansas.

                                               s/ Monti Belot
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE