IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORTHERN NATURAL GAS COMPANY,

      Plaintiff,

v.                                                        Case No. 10-1232-JTM

APPROXIMATELY 9117.53 ACRES IN PRATT,
KINGMAN, AND RENO COUNTIES, KANSAS,
AND AS FURTHER DESCRIBED HEREIN, *et al.*,

      Defendants.

**MEMORANDUM AND ORDER**

This matter came before the court for a hearing to determine the scope of the issues remaining after the Tenth Circuit's remand. *See Northern Nat. Gas Co. v. L.D. Drilling*, *et al.*, 862 F.3d 1221 (10th Cir. 2017); Dkt. 1046. The court heard arguments on February 20, 2018, and took the matter under advisement. The parties have now fully briefed their positions.

**I. Summary of District Court Judgment and Tenth Circuit Ruling**

The district court appointed a Commission pursuant to Fed. R. Civ. P. 71.1 to determine just compensation. (Dkt. 888). Acting under the court's instructions, the Commission conducted lengthy hearings and issued a comprehensive report. The report analyzed voluminous expert testimony and included extensive findings about the migration of storage gas from the Cunningham Storage Field to the 2010 Extension Area and the amount of gas that was likely present in the Extension Area on the date of taking.

In a summary judgment ruling, Judge Belot determined the date of taking was March 30, 2012, when Northern obtained a right to physical possession of the Extension Area property through an injunction. (Dkt. 691). In so finding, he rejected an argument that the date of taking was June 2, 2010, the date of the FERC certificate, when Northern was authorized to proceed with condemnation of the property. (*Id*. at 1-18). Judge Belot also determined that under Kansas law, the landowners held a property interest in any gas (storage or native) remaining under their property on the date of taking, such that Northern was obligated to pay just compensation for the taking of it. (Dkt. 810 at 21-22). He instructed the Commission to consider the "fair market value of any economically recoverable hydrocarbons" in the Extension Area in determining just compensation. (Dkt. 848 at 6). As a result, the condemnation award included the value of recoverable storage gas that the Commission found was present in the Extension Area on the date of taking, which represented nearly $5.9 million of a total award of $7.3 million.

On appeal, the Tenth Circuit determined that "the condemnation award should not have included either (1) the value of storage gas in and under the Cunningham Field on the date of taking, or (2) the lost value of producing such gas after the date of [FERC] certification, because certification extinguished any property interests the Landowners and Producers may have held in the gas before that date." *Northern Nat. Gas*, 862 F.3d at 1225. The court stated that for purposes of appeal, "the parties agree the date of taking is March 30, 2012, which is when Northern perfected its right to take physical possession of the property…." *Id.* The circuit affirmed the only other aspects of the judgment challenged on appeal: the award for the storage lease potential of the Extension Area

tracts, the award for the taking of eight Extension Area wells, and the denial of a request for attorney's fees. *Id.*

According to the Tenth Circuit, "[c]ontemporaneously with certification … any injector acquires storage rights to the property and thus title to gas injected into its legally recognized storage area." *Id.* at 1231 (citing *Northern Nat. Gas Co. v. ONEOK Field Servs. Co.*, 296 Kan. 906, 296 P.3d 1106, 1120, 1125 (2013)).[1] The court further stated:

> [W]hile the Landowners and Producers may have held certain property rights over the natural gas in and under their land at some point in time *before* Northern obtained the authority (via private lease agreements and proper regulatory certification) to include the property within the Cunningham Field's legal boundaries, these rights had been eliminated by the date of taking. On the date of taking, the gas "in place" in and under the Extension Area land was within the Cunningham Field's certified boundaries as required by Kansas law and, accordingly, was wholly Northern's property.

*Id.* at 1231-32.

The circuit thus disagreed with what it characterized as an award for "valuation of lost future production from the Extension Area wells (i.e., the value attributable to recoverable gas reserves in the Viola formation within the 2010 Extension Area on the date of taking)." That award was error because "Northern owned all of the gas within its certified field boundaries after the date of certification." *Id.* at 1232. The Producers "only had a right to produce the gas until the date of certification," and even "prior to the date

---

[1] It is not clear how the circuit concluded that an injector acquires storage rights and title to gas "contemporaneously with certification." The Kansas Supreme Court did not address that issue in *Northern Nat. Gas*, as the district court limited the scope of its summary judgment ruling to matters before June 2, 2010—i.e., the date of certification—and the Supreme Court accordingly remanded the case for further proceedings "to resolve any remaining claims … regarding matters after June 2, 2010…." *Northern Nat. Gas*, 296 Kan. at 942. On remand, the Pratt County District Court concluded (as did Judge Belot) that issuance of a regulatory certificate alone confers no property rights under Kansas law.

3

of certification, the Producers had no right to produce the gas on the 3,040 acres that Northern already leased…." *Id*.[2] The circuit added: "In calculating the loss of future production, the Producers should only be awarded the value of what they could prove they would have produced *before* June 2, 2010, and only on the Extension Area lands not including the 3,040 acres that Northern had leased before the date of certification." *Id. See also Id*. at 1232, n.11. The circuit thus reversed "the district court's inclusion of the value of storage gas in and under the Extension Area on the date of taking when calculating the condemnation award and its inclusion of future production to the extent that it conflicts with today's holdings." *Id*. at 1236.

**II. Scope of Issues on Remand**.

A. *Mandate Rule and Law of the Case Doctrine.* The mandate rule "is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand." *United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998). It provides that a district court must strictly comply with the mandate of the reviewing court. "A lower court is 'bound to carry the mandate of the upper court into execution and [cannot] consider the questions which the mandate laid at rest.'" *Estate of Cummings by and through Montoya v. Community Health Systems, Inc.*, 881 F.3d 793, 801 (10th Cir. 2018). The court is to look to the mandate for any limitations on the scope of remand and, in the absence of

---

[2] Again, it is unclear how the circuit concluded that *prior to* June 2, 2010, the Producers "had no right to produce gas on the 3,040 acres that Northern already leased." The circuit said this was so "because, through those leases, Northern 'otherwise' acquired storage rights for purposes of § 55-1210(a)." But prior to June 2, 2010, the Northern leases were outside the FERC-certified storage area, and thus were not covered by § 55-1210(a). *See Northern Nat.* Gas, 296 Kan. at 926 ("By its plain terms, … section (a) does not apply to gas that has migrated outside the injector's certified storage area.").

4

such limits, exercise its discretion in determining the appropriate scope. *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (citation omitted).

The law of the case doctrine, by contrast, provides that when a court rules on an issue of law, the ruling should continue to govern the same issues in subsequent stages in the same case. *Vehicle Market Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1256 (10th Cir. 2016) (citation omitted). After an appeal, the decision of the appellate court establishes the law of the case and ordinarily will be followed on remand, with the principle applicable to all issues previously decided, either explicitly or by necessary implication. *Id*. (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (internal quotation marks omitted)).

B. *Value of Storage Gas in the Extension Area*. The Producers point to the Tenth Circuit's statement that "[i]n calculating the loss of future production, the Producers should only be awarded the value of what they could prove they would have produced *before* June 2, 2010." They argue this entitles the Producers and Landowners to an award for whatever recoverable storage gas was in the Extension Area before issuance of the June 2, 2010 FERC certificate. (Dkt. 1066 at 4).

The court confesses the meaning of this particular comment by the circuit is not clear. There is no explanation of what "lost future production" the court is talking about.[3]

---

[3] The Producers were in fact producing gas from the Extension Area both before and after issuance of the June 2, 2010 FERC certificate, so the circuit's use of the conditional tense (i.e., the Producers should be awarded the value of gas "*they would have produced*" before June 2, 2010) is puzzling. Elsewhere, the circuit made clear that the Producers were not entitled to recover for any lost production after June 2, 2010. *Northern Nat.* Gas, 862 F.3d at 1225 (award "should not have included … the lost value of producing [storage gas] after the date of certification….")

But the Producers' construction of the comment as authorizing recovery for the value of any storage gas in the Extension Area is plainly at odds with the remainder of the circuit's ruling and with the March 30, 2012, date of taking applied by the circuit. As the circuit noted, "[v]aluation is determined from the 'date of taking' for purposes of valuing the relevant property rights," and the parties agreed the date of taking was March 30, 2012. *Id*. at 1225. According to the circuit, Northern owned the gas in the Extension Area after June 2, 2010, and the Producers thereafter had no right to produce it. So, on the date of taking, Northern owned the storage gas and owed no compensation to the Producers for it. These findings, taken together, necessarily preclude the Producers from obtaining compensation for any storage gas in the Extension Area.

To the extent the Producers are arguing the court should reconsider or adjust the date of taking to June 2, 2010, or that the Tenth Circuit effectively did so, the court concludes such an argument is precluded. That issue was raised, litigated, and adjudicated in the first phase of the litigation. Judge Belot rejected arguments that the date of taking was June 2, 2010, because he found the FERC certificate caused no change in ownership. (Dkt. 691 at 18). But he went on to find that if the landowners' interests did terminate and vest in Northern upon issuance of the FERC certificate, as Northern argued, such a transfer would constitute a taking of property for a public purpose and would require just compensation. (Dkt. 810 at 20-21). He also stated that such a rule would necessarily alter the date of taking. (*Id*. at 22). These rulings were subject to challenge and review on appeal, and the appellate briefs indicate the Producers raised

them.[4] But the Tenth Circuit apparently rejected them—albeit without comment—declaring simply that "the parties agree the date of taking is March 30, 2012." *Northern Nat. Gas*, 862 F.3d at 1225. That date was critical to the Tenth Circuit's analysis, as the obligation to pay just compensation is determined from the date of taking. *Id*. at 1232.

The Tenth Circuit also implicitly denied Producers' arguments that they were entitled to compensation if the FERC certificate extinguished their property rights. The circuit concluded the Producers had no property rights in the storage gas on March 30, 2012, and thus Northern owed no compensation for it, even though the Producers "may have held certain property rights" before the FERC certificate was issued. The circuit said there was no Fifth Amendment taking and that Producers' argument was based on "a fundamental misconception about the rule of capture," which conferred only a right to produce the migrated gas and conferred no right to the gas itself. *Id*. at 1232.[5] Rather than a taking, the court said, Kansas law "merely prohibits the Landowners and Producers from recovering the value of storage gas that Northern both (1) originally owned and injected, and (2) acquired certificate authority over." *Id*. Nothing in the circuit's language or reasoning suggests this court is free on remand to find that elimination of the Producers' interests on June 2, 2010 was a compensable taking, or that it is free to establish

---

[4] *See* Appellee/Cross-Appellant Producers' Brief, No. 15-3272 (10th Cir.) at 25: "If *Union Gas* is interpreted to grant Northern title to all gas that was in the 2010 Extension Area when FERC issued the certificate—and to all gas that would later migrate there—then that interpretation takes the Landowners' and Producers' property without just compensation. As the District Court explained, such a construct would violate the Fifth Amendment, and it would directly contradict the District Court's ruling that the taking occurred on March 30, 2012—nearly two years after the FERC certificate was issued."

[5] The circuit did not address Judge Belot's determination that "even if the Producers only held a right to produce the storage gas, and had no vested interest in the gas itself, such a right was still a valuable property interest, the taking of which would require payment of just compensation." (Dkt. 810 at 18, n.11).

a new date of taking to govern the claims. Had the circuit so intended, it surely would have said so.

It is true the circuit did not explain how a governmental certificate could extinguish the Producers' property interests and vest them in Northern without there being a compensable taking. But this court is not at liberty to disregard the Tenth Circuit's opinion or to reframe the litigation in a way that nullifies or avoids the Tenth Circuit's holding. *Estate of Cummings*, 881 F.3d at 801 (citing Bryan A. Garner *et al.*, *The Law of Judicial Precedent* § 55 at 459 (2016) ("When a case has been heard and determined by an appellate court, the legal rules and principles laid down as applicable to it bind the trial court in all further proceedings in the same lawsuit. They cannot be reviewed, ignored, or departed from.")). There are two unmistakable findings in the circuit's opinion: (1) the date of taking was March 30, 2012, and (2) Northern owned the storage gas in the Extension Area on the date of taking. The unmistakable import of these findings is that the Producers are not entitled to compensation for Northern's acquisition of the storage gas in the Extension Area. Under the mandate rule, this court is obligated to enforce those findings, and they accordingly limit the scope of the issues remaining after remand.

Application of the law of the case doctrine similarly weighs against re-litigation of the fundamental bases of the district court's judgment and the Tenth Circuit's ruling. As the Tenth Circuit recently explained:

> Law of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation. It's a pretty important thing too. Without something like it, an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't

> succeed, just try again. A system like that would reduce the incentive for parties to put their best effort into their initial submissions on an issue, waste judicial resources, and introduce even more delay into the resolution of lawsuits that today often already take long enough to resolve. All of which would "gradual[ly] undermin[e] ... public confidence in the judiciary." *McIlravy v. Kerr–McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000); Charles Alan Wright et al., 18B Fed. Prac. & Proc. Civ. § 4478 (2d ed. 2002) (the doctrine embodies "[t]he basically simple principle of disciplined self-consistency").

*Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016). The arguments the Producers now seek to raise were briefed, litigated, and ruled upon in the first phase of the litigation, and were then raised again on appeal before the Tenth Circuit. To relitigate the same issues would be "little more than an invitation to take a mulligan." It would waste judicial resources and further delay resolution of what is supposed to be an efficient statutory mechanism for establishing underground storage facilities.

The circuit's opinion requires a recalculation of just compensation to exclude the value of storage gas in the 2010 Extension Area on the date of taking. The court concludes the amount of the award attributable to that storage gas can be determined with reasonable accuracy from the existing record and from the factual findings of the Commission without a retrial of the case. Under the mandate rule and the law of the case doctrine, the factual findings and legal conclusions embodied in the district court judgment continue to apply on remand, and should not be opened for re-litigation, except to the extent they are inconsistent with the Tenth Circuit's opinion.

C. *Northern claim for set-off*. Northern argues the circuit's finding that it owned the storage gas in the Extension Area after June 2, 2010 revives its claim for set-off of the value of storage gas produced by defendants after that date. The Producers contend Northern

9

does not need a claim for set-off because it can assert such a claim in the ongoing state litigation. But the issue here is simply whether a claim for set-off is within the scope of issues to be decided on remand. The court agrees with Northern that nothing in the circuit's opinion or in the law of the case precludes such a claim. Producers can of course assert their procedural argument when the merits of the claims (including set-off) are briefed by the parties.

In sum, the remaining issues encompass the following. First, the value of recoverable storage gas in the 2010 Extension Area on the date of taking (March 30, 2012) must be excluded from the condemnation award. The value of any recoverable native gas in the Extension Area on the date of taking need not be excluded under the circuit's ruling, except with respect to the 3,040-acre portion leased by Northern. Second, the court must determine whether and to what extent Northern is entitled to set-off for any storage gas produced by the Producers after issuance of the June 2, 2010, FERC certificate. Finally, the court must consider any other adjustments rendered necessary by the required recalculation of the condemnation award, such as the amount of interest owed by Northern.

**IT IS THEREFORE ORDERED** this 2nd day of March, 2018, that the issues on remand will be determined as indicated in this order. The parties are granted until April 20, 2018, to file dispositive motions on the remaining issues, and are granted until May 23, 2018, to file responses to the motions.

                                          ___s/ J. Thomas Marten_____
                                          J. THOMAS MARTEN, JUDGE